Judge Carr.
These were motions made in the County Court of Bed-ford, by the Lynchburg and Salem Turnpike Company, against the Grays, for failing to pay three requisitions on their shares. The Court gave judgments on the motions for the plaintiffs; and the defendants stated all the evidence, and excepted to the opinion of the Court in giving judgments against them on this evidence.
The two cases were admitted in argument to be the same; except, that in the case against J. P. Gray, there* was a motion for a continuance by the defendant, overruled, and an exception taken. This may be thrown at once out of the case, with this single remark, that Gray *579 having had four continuances, and shewing¿po good ground for a fifth, the Court were perfectly right in ruling him to trial.
Many objections were taken in the argument to the judgment of the Court'below. I will consider them in the order in which they were made.
1. It is said that there was no evidence in the record, that the Company was ever incorporated. I find, on examination, that it is laid down in many cases as settled law, that when a corporation sues, either on a contract or to recover real property, they must, at the trial, under the general issue, prove that they are a corporation. Hob. 64, 211. 2 Ld. Raym. 1535. 1 Kyd on Corp. 292. Bull. N. P. 107. 8 Johns. Rep. 295. 14 Johns. 416. 10 Johns. 162. 19 Johns. 300. 2 Cow. Rep. 770. They need not indeed set forth in their declaration, by way of averment, how they were a corporation, but, they must prove it on the trial; as it is considered a part of their case, to be made out by evidence to the jury. I have found no decisions, either in the English books or those of our sister States, arising on motions made by corporations; but this I presume, is because they have not there the privilege (given to some of them by us,) of recovering debts due them, by this summary remedy. The doctrines, however, which govern suits brought by them, will unquestionably apply as strongly, if not a fortiori, to motions. It is clear then, that to support their motion, it Was incumbent on the plain- v tiffs below, to shew that they were a corporation; and we must examine the record to see, whether it contain such proof. In doing this, I consider the Court as occupying precisely the same ground they stand on, in considering a demurrer to evidence in common actions; and the reason is strong for going to the same extent in drawing all fair inferences. Indeed, there seems to be something of professional management, unfriendly to truth and justice, in counsel’s standing by during the progress of the trial, making no specific objection for defect of evidence as to *580 any particular point, (which; if objected to, could be supplied at once,) but excepting to the sufficiency of the whole evidence; and thus taking the chance of all defects or omissions, which forgetfulness or want of skill in the adversary^ may present, J do not mean to say, that this is unfair practice; but that it is a course, which (as is said of demurrers to evidence,) ought to be discouraged; and in which, as the adjudged cases shew, Courts will be extremely liberal in supplying positive proof by intendment and inference. The corporation produced, first, the law creating them, which directed that books should be opened at certain towns, to receive subscriptions for making the contemplated road, to the amount of $ 100,000, and refers to the General Turnpike law, for the manner in which they shall proceed to organize themselves into a corporation. That law enacts, that the books shall remain open, until half of the capital stock be subscribed; public notice of which shall be given by any three of the commissioners, who shall have power at the same time, to call a general meeting of the subscribers, at such convenient place and time as they shall name in the notice. To constitute such meeting, a number of persons entitled to a majority of all the votes, which could be given on all the shares subscribed, shall be present, in person or by proxy; and if a sufficient number do not attend on that day, those who attend may adjourn from time to time, until a meeting is formed. If it shall appear to-this meeting, that half the stock is subscribed, then the subscribers, from that time, shall be incorporated into a Company, with all privileges, &c., and shall elect officers, make bye-laws, Sic. To prove that they have pursued the course pointed out by this law, the plaintiffs produced a book, which J. Bonagh, the clerk of the corporation, proved to be the original corporation book. The book, thus authenticated, was no doubt proper evidence. This is laid down in many cases.
In Owings v. Speed, 5 Wheat. 420, Chief Justice Marshall, speaking on this subject, says, £:The books of such *581 a body are the best evidence of their acts, and ought to be admitted, whenever those acts are to be proved.” This book states that, “at a meeting of the Lynchburg and Salem Turnpike Company, at the Franklin hotel in the town of Lynchburg, on Wednesday the 1st of Juiy, 1S18, the commissioners having produced the books of subscription for the towns of Lynchburg, New London and Liberty, and it appearing .that 876 shares of stock, of $ 100 each, have been subscribed, amounting in the whole to the sum of @87,600; and it further appearing, that a majority of the stock-holders, either in person or by proxy, are present,” &c. proceeding to elect officers, appoint a committee to prepare bye-laws, &c.
It is objected, that this evidence does not prove a compliance with the requisitions of the Statute, first, because there is no proof of the notice of time and place of the meeting required by the act. I answer, that the sole end of this notice was to procure a meeting, and set the ball in motion. If this end has been attained, it is fair to presume, that the legal means were employed; and it would be very dangerous doctrine to the numerous corporations we are every day creating, to say, that at any distant period, they should be obliged, in any motion against a delinquent member, to produce the advertisement calling the meeting which organized them.
It is objected, secondly, that the entry in the book does not shew that the meeting consisted of “a number of persons, entitled to a majority of all the votes, which could be given on all the shares subscribed,” which the law requires. The entry certainly has not followed the words of the law; and if it intended to express the same idea, it has doné it a little awkwardly; yet that it did so intend, I am strongly inclined to think. It must have been apparent to every member, that the law required a majority of the stock to be represented in the first meeting; and to that end, directed that those who first met, should adjourn from ' time to time, until such majority should attend. Wc can *582 conceive no motive for departing from the law. The meetjng consisted of partners in the firm, all interested in putting the institution legally into operation. They did organize it, and it has gone on ever since, without objection we iiear 0f_ Under these circumstances, may we not fairly conclude, that the meeting was a legal one ? That by the words “majority of the stock-holders,” the clerk meant such a majority as the law required, to wit: holders of a majority of the stock ? I think this by no means a strained inference.
It was next objected, that there is not sufficient evidence that the defendants were stock-holders. The original subscription books were produced in Court, with the names of the defendants thereto, the one, J. P. Gray, for ten shares; and he, in Court, acknowledged his hand-writing; the other, B. Gray, for five shares, and as to him, a witness proved, that the hand-writing was like his. It was further proved, that he had stated himself a subscriber for five shares; and in addition, a power of attorney, purporting to be executed by him, was produced, authorising Isaac St. Clair, as his proxy, to represent him in all future elections in the Lynchburg and .Salem Turnpike Company. This power of attorney was attested by his brother, J. P. Gray, who testified that he executed it for B. Gray, being empowered by him to do so. This, I think, was abundant evidence to prove the defendants subscribers.
It is next objected, that the notices of the three requisitions, and of the sale of the stock, were not sufficiently proved: that the papers in which they were published, should have been before the Court. It seems to me, that the papers (some of them at least,) were before the Court. The notice is given verbatim, said to be,' “in a Lynch-burg paper called the Press, dated the 28th of August, 1818; another paper of the 4th of September; another of the 11th; and another of the 21st, containing the same advertisement.” These are the words; and they convey to my mind the idea, that the papers were in Court. Then *583 follows the evidence of Payne, who states that he saw the notice in these different papers. This evidence is as to the first requisition. As to the second and third, and the notice of the sale of the stock, these notices are fh’st exhibited to the Court, and are spread verbatim on the record, and then Payne swears, that he had examined the file of newspapers, and saw each notice published there for the length of time required. This was, I think, proper evidence, and quite sufficient to satisfy us that the notices were correctly given.
The last objection which I shall examine, arises on the 6th section of the General Turnpike law. That section substantially enacts, that if a stock-holder shall fail to pay the sum required of him, the President and Directors may sell his stock at auction, and retaining the sum due, and all charges of sale, pay the overplus to the owner. And if the sale shall not produce the sum required to be advanced, with the incidental charges, then the President and Directors may recover the balance, of the stock-holder or his assignee, by motion and ten days notice.
The Grays failing to pay the requisitions, theii* stock was advertised, and cried by the auctioneer, but not sold, for want of bidders; and the question is, are they liable to a recovery by motion for the amount of the requisitions ? This has been, to my mind, the most serious objection in the cause; and at one time, I doubted exceedingly whether it was not fatal to the motion; especially when we consider the strictness with which this Court has taken this summary remedy; but my brethren think differently, and further reflection has induced me to believe that they are right. The power to sell the stock of delinquents, was given to the Company, for their benefit. It was thought, no doubt, that this power would coerce the stock-holders to punctuality in paying the calls; and if not, would secure to the Company the speedy receipt of the money, by sale of the stock. But, in case this sale should not raise the whole sum, a motion is given for the balance. Now, ought we *584 to turn this power of sale, given for the safety of the Company, to their ruin? If the stock had sold for a single cent, there can be no doubt that this motion would have been sustained for the whole sum required, even for more than jg novv. required; for the sum given, (a cent,) would not have paid the costs of sale, and the motion would have been for the sum required, with the addition of such costs. In such case, then, the stock-holder would have lost his stock entirely, and been subject, by motion, for the sum demanded; whereas, in the case before .us, he is left in possession of his stock, and is only held to pay the sum required, which was certainly the meaning of the law. For it seems clear, that the intention was to give the motion to supply all deficiencies, which could not be answered by a sale of the stock.
The other Judges concurred, and the judgment'was affirmed.