# WHEELING.

.1873.
June Term.

HART vs. BALTIMORE & O. R. R. Co.

IRA HART, PLAINTIFF IN THE COURT BELOW AND DE-
FENDANT IN ERROR *against* THE BALTIMORE AND
OHIO RAILROAD COMPANY, DEFENDANT IN THE
COURT BELOW AND PLAINTIFF IN ERROR.

Decided July 10th, 1873.

## SYLLABUS.

1. It is the usual course when the opinion of the court is in favor of
the defendant on a demurrer to the whole declaration, to allow the
plaintiff to withdraw his joinder in the demurrer, and amend his
declaration, if the ground upon which the demurrer is sustained is
of such a nature, as can be removed by an amendment. And
there is no difference in this respect at common law or by statute
between penal, and other actions.

2. So much of sec. 56 of Chap. 125 of the Code of this State as
provides, that, if the court overrule the objection, and allow the
plea to be filed, the plaintiff may take issue thereon, without losing
the benefit of the objection, and may on appeal from a judgment
rendered in the case in favor of the defendant, avail himself of the
error committed in allowing such plea to be filed, without except-
ing to the decision of the court therein, does not apply where
the plea is rejected by the court. In such case the judgment of
the court rejecting the plea should be excepted to by the party of-
fering it.

1873.
June Term.

3. If a plea is filed by a defendant, without objection, and thereby becomes a part of the record, and afterwards the court on motion of the plaintiff, rejects the plea, and the defendant fails to except to the opinion of the court in rejecting the plea the Appellate Court must presume that the defendant acquiesced in the decision of the court in rejecting the plea.

4. Although it may, strictly speaking, be irregular for the court after an improper plea has been filed, and thereby become a part of the record, to entertain and grant a motion to reject the same, still if the court does so, it must, in substance and effect, ,be regarded as setting aside the plea, and though it is done irregularly the proceedings will not be reversed for such irregularity. In such case the court having done right substantially, its proceedings will not be reversed because of mere informality in the mode of doing it.

5. If an insufficient plea be tendered, and permitted to be filed, it is competent and proper for the court at a subsequent time to correct that error by setting aside the plea.

6. In an action upon a penal statute, more than a year after the cause of action accrued, the plaintiff, on a demurrer to his declaration being sustained, asked and obtained leave of the court to amend his declaration, against the objections of the defendant, and the declaration is amended in court, and thereupon the defendant tenders to the court a plea, in substance, that the plaintiff, his action ought not to have and maintain, because, the cause of action did not accrue within one year before he filed his amended declaration:

HELD,

That under the law in force in this State on the 9th day of March 1869, the statute of limitations did not run in such case in favor of the defendant up to the time of the filing of the amended declaration, but only until the commencement of the suit, that is the issuing of the original writ.

7. When there is a demurrer to a declaration and no formal joinder therein appears to have been entered of record, but the record shows that the "parties appeared by their attorneys, and the matters of law arising upon the defendant's demurrer to the plaintiff's declaration, being argued by counsel, and considered by the Court the same is overruled.

HELD,

That although it may have been irregular for the court to act upon the demurrer without joinder therein being entered of record, still the judgment of the court below will not be reversed for this cause, if the declaration is good.

41

1875.
June Term.

8. A corporation should sue and be sued by its true name, and if it is sued by its true name it is not necessary to show in the declaration how it was incorporated, or to aver in the declaration that it is a corporation duly constituted, or that it is authorized by law to sue or be sued in its corporate name; but these questions may be put in issue by the defendant, or raised upon the trial of the general issue.

9. It is a general principle in pleading that it is not necessary to allege in the declaration more than it is necessary to prove at the trial, except so far as may be necessary for a right understanding of allegations that are required to be proved.

10. A private law is one which relates to private matters which do not concern the public at large, and a public law is one which effects the public, either generally or in some classes.

11. The courts take judicial notice of all public laws or acts of the Legislature, and they need not be proven. Private laws or acts of the Legislature, it seems, must be proven when in issue.

12. Under the Code of 1860, and the Code of 1868, acts and resolutions of the Legislature, though local or private, may be given in evidence without being specially pleaded; and an appellate court must take judicial notice of such as appear to have been relied on in the court below.

13. In considering the demurrer to the declaration in this cause if the acts of the Legislature incorporating the Defendant can be considered private acts, it was competent for the Court to read and consider said acts on their being brought to its attention by the Plaintiff's attorney.

14. The 61st Chap. of the Code of 1860 is a public law.

15. The acts of the Legislature conferring corporate powers and privileges upon the Baltimore and Ohio Railroad Company are such public acts as the Court should notice *ex officio*.

16. The Court *ex officio* knows that the Baltimore and Ohio Railroad Company is an incorporated railroad company within the boundaries of this State, and was when Chap. 61 of the Code of 1860 of Virginia took effect, and was before and at the time said chapter took effect, governed by the act passed by the Legislature of Virginia on the 11th day of March 1837, prescribing general regulations for the incorporation of railroad companies so far as the same can apply.

17. It was not necessary to allege in the declaration in this case that the rates prescribed by sec. 19 of Chap. 61 of Code of 1860, applied to the road of Defendant, nor that different rates had not been prescribed by law.

19. Under the provisions of the Code of Virginia of 1860, Chap. 171, sec. 31, and of the Code of West Virginia, Chap. 125, sec. 29: On a demurrer, (unless it be to a plea in abatement), the court can not regard any defect or imperfection in the declaration or pleadings unless, there is omitted something so essential to the action or defence that judgment according to law and the very right of the cause cannot be given.

20. The action in this case is based upon the provisions of the 61st Chap. of the Code of 1860, 1st and 18th sections thereof.

21. The amended declaration in this cause is sufficient in law.

22. The appeal in this case was properly taken by the Appellant, because the controversy is "concerning the right of a corporation to take toll."

23. It is unnecessary to prove before the Court matters of law or fact of which it may take judicial notice.

24. The joinder in demurrer not being added is not an available error in an appellate court, when the demurrer has been argued and decided on its merits below without the objection being made.

The case is stated in the opinion of the Court.

*Lee* for Plaintiff in error.

*Basil* for Defendant in error.

HAYMOND, President.

In this case the Plaintiff brought an action of trespass on the case, in the Circuit Court of the county of Harrison, against the Defendant, for charging and receiving for transporting on its road a portable saw mill of the Plaintiff, more than was lawful for the Defendant to demand and receive. The action was commenced on the 7th day of April 1868, and the declaration was filed at May rules of same year. At the September term, 1868, of the Court, on motion of the Defendant, the judgment and order of inquiry entered at rules in the cause were set aside, and the Defendant demurred generally to the declaration, and the Plaintiff joined in the demurrer. The Defendant at the same time filed a plea of not guilty, upon which issue was joined. Afterwards, at the December Term 1868, the

Court sustained the demurrer to the declaration. Thereupon on the same day the Plaintiff moved the Court to grant him leave to amend his declaration, and the Defendant objected to the Court granting the leave. The Court took time to consider the motion. Afterwards, at the March Term 1869, the Court granted to Plaintiff leave to amend his declaration, and the declaration was at once amended in Court. The Defendant on the same day appeared in Court and demurred generally to the amended declaration, and also pled not guilty. Upon this plea issue was regularly joined. At the same time the Defendant filed, as the record states, a special plea in writing. The special plea is copied into the record now before this Court. It does not appear by the record that the Plaintiff at the March Term 1869 moved the Court to reject the special plea or replied, or took any notice or action whatever in relation thereto. Afterwards, at the October Term 1870, the parties appeared by their attorneys, "and the matters of law arising upon the Defendant's demurrer to the Plaintiff's declaration being argued by counsel, and considered by the Court, the same" were overruled. It does not appear that joinder in the demurrer to the amended declaration, by the Plaintiff, was entered of record. In fact, the record only shows that the Defendant demurred to the amended declaration, and that the demurrer was considered by the Court, and disposed of as before stated. Afterwards and at the same term at which the demurrer was overruled, the Plaintiff moved the Court to reject the special plea filed in the cause, and the Court after argument sustained the motion and rejected the plea. At the March Term 1871 the cause was tried by a jury upon the issue joined upon the plea of not guilty, and the jury rendered a verdict in favor of the Plaintiff for $75. The Court rendered judgment upon the verdict against the Defendant for the amount thereof and for Plaintiff's costs.

The amount in controversy in this cause is inconsid-

1873.
June Term.

Hart
v.
Baltimore &
O. R. R. Co.

erable, but the case presents several important and difficult questions for determination. We will consider first the errors assigned, and argued before us by the counsel for the Defendant, who is appellant here.

The first error assigned is that "The Court erred in giving the Plaintiff leave to amend his declaration notwithstanding the Defendant's objection. 1. Because the action was upon a penal statute, to subject the Defendant to a penalty for a misdemeanor. 2. Because when the leave to amend was applied for by the Plaintiff, more than a year had elapsed since the commission of the alleged offence as laid in the declaration."

In Virginia, and in this State, the usual course, where the opinion of the Court is in favor of the Defendant on a demurrer to the whole declaration, is to allow the Plaintiff to withdraw his joinder in the demurrer, and amend his declaration, if the ground upon which the demurrer is sustained be of such a nature as can be removed by an amendment. 1 Robinson, old Practice, 287. This practice is supported by a number of decisions of the Supreme Court of Appeals of Virginia and of this State, which we deem it unnecessary to cite. If the action in this case is penal in its nature and character, should it, because of that fact, be made an exception to the usual course of practice? In this case the party who claims to be aggrieved is the Plaintiff. "There is no difference as to the doctrine of amending at common-law, between penal and other actions." 2nd Vol. Stephen's Nisi Prius, 1197, under the head of "Amendment of declaration &c.," and cases therein cited in note 41. We think according to the established doctrine upon the subject of granting leave to plaintiffs to amend their declarations the Court below did not err in permitting the Plaintiff to amend his declaration in this case.

The second error assigned by Plaintiff's counsel is: "The Court erred in rejecting the special plea of the De-

fendant, which had been filed at the March term of the Court. 1. Because said plea having been regularly filed at a previous term of the Court, a motion to reject the same was not proper, and should not have been entertained by the Court. The party should have been put to his demurrer. 2. If the Court did not err in granting the leave to amend, yet as by the amendment the Plaintiff made a new case more than a year after the offence committed, the Defendant should have been permitted to set up the defence of limitations to the new case made by the amendment."

This error ought properly to be considered after considering the points arising upon the third error assigned by the Defendant's counsel, but for convenience we have thought it best to consider the errors as they are assigned.

The amendment of the declaration—the appearance by the Defendant to the amended declaration, and pleading, and filing the special plea thereto all occurred prior to the time when the Code of 1868 took affect, but the motion to reject was made after the Code of 1868 took effect, and while its provisions were in full force so far as they had not previously been amended by the Legislature. Under the provisions of the 56 sec. of Chap. 125 of the Code of 1868 a motion to reject a plea, strictly speaking, should be made when the plea is offered, or at least before the record shows the court allowed it to be filed, the section of the Code cited provides, that, if the court overrule the objection and allow the plea to be filed, the plaintiff may take issue thereon without losing the benefit of the objection, and may, on an appeal from a judgment rendered in the case in favor of the defendant, avail himself of the error committed in allowing such plea to be filed, without excepting to the decision of the court therein. This provision in terms does not seem to apply where the objection is sustained, and the plea rejected by the Court. In such case, properly, the opinion of the Court should be excepted to by the party

offering the plea, so as to make the plea a part of the record and identify it as such. In the case of White vs. Toncray, 9 Leigh 347, it was decided that, "If pleas be tendered by a defendant and rejected by the court, and he takes no exception to the rejection of them he shall be presumed in the appellate court to have acqui-esced." In the case under consideration the motion to reject was made after the special plea was allowed by the Court to be filed. Judge Tucker who delivered the opinion of the Court in the case last cited says; "If the plea is received, it becomes part of the record at once, by the voluntary act of the Court." But further on in the same opinion the Judge uses this language: "This brings me to remark, 2, that even if the pleas had been spread upon the record, and constituted a part of it, this Court must take it that they were properly rejected, as the Defendant did not except. His acquiesence in the rejection must be presumed; and as it is possible there may have been good reason for the rejection; that reason must be taken to have existed, as he did not call upon the Court to sign a bill of exceptions, in which its reason would have been stated. A contrary practice would lead to absurdity and mischief." In this opinion of Judge Tucker the Judges of the Court concurred, except Judge Brockenbrough who was absent. In the case of Kemp vs. Mundell and Chapin, 9 Leigh 12, it was decided that "If an improper plea be received, and issue be taken on it, the court may afterwards set aside the issue and the plea; and if this be in substance and effect done, though in form irregularly done, the pro-ceedings shall not be reversed for such irregularity." In the case last cited the court held that the plea filed, on which issue had been joined, was not a good plea, and Judge Tucker who delivered the opinion of the Court in the case said: "The Court, therefore, erred in receiving the plea, and might very properly at a subsequent time correct that error by setting aside the issue and the plea.

It has done this substantially, by entering a judgment as if there had been a demurrer. Perhaps indeed we ought to infer that there was one ; but even if there was none, the Court having done what was right, we cannot reverse its acts because it has not done it in the right way ; since the mode of doing it has no influence upon the justice of the case." If the opinion of the Court rejecting the special plea had been excepted to, and the plea made part of the record, and properly identified by bill of exception, so that we could consider whether the Court erred in rejecting the plea on the motion to reject it, if the plea is not good in law, we ought not to reverse the judgment of the Court because it rejected or substantially set aside the plea in an irregular way. If the plea is insufficient then the Court erred in permitting it to be filed, and it was competent and proper for the Court at a subsequent time to correct that error by setting aside the plea. It has done this substantially in sustaining the Plaintiff's motion to reject, and rejecting the plea. In the language of Judge Tucker, the Court having done what was right, we cannot reverse its act because it has not done it in the right way; since the mode of doing it has no influence upon the justice of the case.

The special plea in question is in substance that the Plaintiff's cause of action did not acrue within one year before he filed his amended declaration. The plea we think is insufficient and bad on its face. The statute of limitations did not run in favor of the Defendant in this case up to the time of the filing of the amended declaration, but only until the commencement of the suit, that is, the issuing of the original process. The amendment of the declaration, and the appearance of the Defendant to the amended declaration was before the Code of 1868 took effect, and while the law and practice of the courts upon the subject of amending declarations, the proceedings thereon, and perhaps the effect thereof, were some what different from the law as contained in

the Code of 1868. But, we do not consider it necessary or proper for us to determine the effect of filing an amended declaration under the provisions of the Code of 1868, touching the statute of limitations or otherwise, as no question of the kind arises upon the record.

The third error assigned is that: "The Court erred in overruling the demurrer to the declaration as amended. 1. The Plaintiff having failed to join in the demurrer, was in default, and it was error for the Court to proceed to consider and overrule the same. 2. Chap. 61 of the Code of Virginia, (1860) on which this action was founded, applies only to incorporated companies. See sec. 1, p. 352. The declaration does not allege that the Defendant was an incorporated company. 3. The said chapter applies only to such incorporated railroad companies as were governed by the act passed March 11th, 1837, prescribing general regulations for the incorporation of Railroad companies, and such as should be incorporated after the commencement of that act. The declaration does not allege that the Defendant was governed by the act of March 11th, 1837, or had been incorporated after the commencement of the act. Code of Virginia, (1860) sec. 1, p. 352–4. If the Defendant was an incorporated company, it had been incorporated prior to the commencement of that act, and was not subject to the provisions of that chapter, and was not liable to the penalties which they prescribed. And so the declaration failing to show that the Defendant was in the category of those companies that were subject to the provisions of Chap. 61 was bad, and the demurrer should have been sustained. 5. The declaration does not allege that the rates prescribed by sec. 19 applied to the road of the Defendant, nor that different rates had not been prescribed by law for said road. 6. The declaration does not allege what would have been lawful toll for the transportation of the saw-mill in the declaration mentioned, so that the Court might see that

42

the charge made was excessive.    7. The declaration does not allege that the article transported weighed more than four pounds to the cubic foot, nor if it weighed less that the toll charged on each cubic foot, as per four pounds weight, would not have amounted to the sum alleged to have been charged for the transportation."

The parties appeared before the Court at the time the demurrer was taken up by the Court, for consideration, and the Court heard the argument of counsel, and treated and considered the demurrer as though there was joinder therein by the Plaintiff.    The language of the order of Court is : "This day came the parties, by their attorneys, and the matters of law arising upon the Defendant's demurrer to the Plaintiff's declaration being argued by counsel and considered by the Court, the same is overruled."    It is clear that the Court fully considered the demurrer, and in overruling it held the declaration to be sufficient as fully as though there had been a formal joinder.    "Perhaps, indeed, we ought to infer there was one," as said by Judge Tucker in the case of Kemp vs. Mundell et al, in speaking of a demurrer. "The joinder in demurrer not being added, is not an available error in an appellate court, when the demurrer has been argued and decided on its merits below without objection being made."    Miller vs. McLuer, Gilm. 338. No objection appears to have been made in this case in the Court below.    For this irregularity, if such it be we think we should not reverse the judgement of the Court if the declaration is good.    If the declaration is good, and there had been a formal joinder in the demurrer made to appear by the record, then the judgment of the Court should have been just what it was.    If therefore the declaration is in fact sufficient, the Defendant is not prejudiced by the irregularity, and cannot claim benefit therefrom here.    The case is not analagous to the case of swearing a jury to try an issue, when there is no issue.    A corporation should sue and be sued by its true name.    If it is sued by its true name it is not nec-

1878.
June Term.

Hart
v.
Baltimore &
O. R. R. Co.

essary to show in the declaration how it was incorporated. Grays vs. Turnpike Company, 4 Ran. 578. 5th Robinson's Prac. 315. "In a suit brought by a corporation it is not necessary to aver in the declaration that it is a corporation duly constitued, or that it is authorized by law to sue in its corporate name; but these questions may be put in issue by the defendant, or raised upon the trial of the general issue." Rees vs. Conococheague Bank, 5 Rand. 326. There is no reason why the same doctrine should not apply when a corporation is sued, and it seems to be so held by the authorities. But it is insisted that while it is generally true that a corporation may sue or be sued by its name without avering it to be a corporation, that still in this case the declaration is not good, because by the provisions of the 1st and 18th secs. of Chap. 61 of the Code of Virginia of 1860, an action cannot be maintained for the cause in the declaration mentioned against any person except an incorporated railroad company, and that for the declaration to be good, it should aver in express terms that the defendant was an incorporated railroad company. In this case the Defendant is sued by the name of "The Baltimore and Ohio Railroad Company." The name by which the Defendant is sued argues a railroad corporation, as in the case of cities. Hobarth 211 a 5 Robinsons practice 315 and note. The declaration after describing the place at which the mill was delivered to the Defendant, and also the weight of the mill says; "And said mill was to be transported by the Defendant to its depot at Tunnelton, in the county of Preston in said state, a distance of 43 miles from its said depot at Clarksburg." Thus in describing the Defendant the Plaintiff uses the pronoun "its," and "its depot." The declaration then proceeds thus: "And the Defendants did then and there (at Clarksburg) demand and receive from the Plaintiff for the transportation of said mill between the places aforesaid, the sum of ($11,60) eleven dollars

and sixty cents, which sum was more than was lawful for the Defendant to demand and receive for the transportation of said mill between the places named, and contrary to the statute in such case made and provided." The declaration employs the exact language of the 18 sec. of Chap. 61 of the Code, and alleges that the Defendant so acted "contrary to the statute in such case made and provided." How could the Baltimore and Ohio Railroad Company demand and receive from the Plaintiff, for the transportation of the Plaintiff's mill between points named, more than was lawful, contrary to the statute in such case made and provided, if it was not an incorporated railroad company, bound by the provisions of the said act of 1837 or incorporated subsequent to the passage of the 61 Chap. of the Code. of 1860. Although it must be admitted that the declaration in this case is obscure, and inartificially drawn, still considering the name of the Defendant as sued, and the description of it subsequently by the words "its" and "its depot" and the places and counties where the depots are located, and the allegation that the Defendant demanded and received more than was lawful for the transportation of the mill between the places named, contrary to the statute in such case made and provided, may not the declaration reasonably be construed in legal effect to allege that the Defendant is an incorporated railroad company. "There is a material distinction, not always observed by writers on pleading—and the non-observance of which has some times occasioned confusion between *pleading, counting upon,* and *reciting* a statute. Pleading a statute, is merely *stating the facts* which bring a case within it, without making mention or taking notice of the statute itself: *Counting upon* a statute, consists in making *express reference* to it—as by the words, against the form of the statute ('or by force of the statute') in such case made and provided : *Reciting* a statute, is *quoting* or stating its *contents*. A statute may, therefore, be *pleaded* without *re-*

*citing* or *counting upon* it; and may be *counted upon* without being *recited*. "Gould on pleading Chap. 3 note 3. If it be doubtful whether the declaration does in legal effect allege that the Defendant is an incorporated railroad company, it is a well established principle in pleading that it is not necessary to allege in a declaration more than it it necessary to prove at the trial. There are public and private laws, or acts of the Legislature. Bouvier in 2nd vol. of his Law Dictionary p. 14 says; "A private law is one which relates to private matters, which do not concern the public at large" and that "A public law is one which effects the public, either generally or in some classes."

The courts take judicial notice of all public laws or acts of the Legislature of the state, and they need not be proven. Private laws it seems must be proven when in issue. In the case of Stribling *vs.* Bank of the Valley, 5 Randolph, on page 138, Judge Carr in his opinion uses this language : "The distinction between public and private acts, is unquestionally a doctrine of the common law ; but, as I must say that it seems to me to be founded much more in technical and artificial meaning than in good sense, I do not feel inclined to carry it beyond the strict letter."

In England, and in some states of this country, the rule seems to be, that when a body corporate institutes legal providings on a contract or to recover real property, it must at the trial, under the general issue, prove the fact of incorporation, unless the act of incorporation be a public act, which the courts are bound to notice *ex officio*. Angel and Ames on corporations page 698 sec. 632, and the various cases there cited in note 3 and note 1 p. 699. It is however generally admitted, that a corporation may declare in its corporate name, without setting forth in the declaration the act of incorporation, if the act be private; same author p. 699, and the many cases there cited in note 2. In many of the states on the other hand the rule is well established, that if in a suit brought

1873.
June Term.

Hart
v.
Baltimore &
O. R. R. Co.

by a corporation the Defendant pleads the general issue, it is an admission of the corporate existence of the Plaintiff which dispenses with all proof on that point, same author p. 700 sec. 633, and note 1, and the many cases there cited. See against and for this doctrine 5 Robinsons practice Chap. 32 secs. 1, 2 and notes, pp. 315-316 and 317. In Virginia in the cases of Grays *vs.* T. P. Co. 4 Rand. 578 ; Rees *vs.* Conococheague Bank 5 Id., 329 ; Taylor's adm'r *vs.* Bank of Alexandria, 5 Leigh 471 ; Jacksons adm'r *vs.* Bank of Marietta 9 Leigh 240 it appears to have been held that in case of private corporations the incorporation must be proved. In Chap. 176, sec. 1 of the Code of Virginia of 1860 there are these provisions "Acts and resolutions of the General Assembly, though local or private, may be given in evidence without being specially pleaded ; and an appellate court shall take judicial notice of such as appear to have been relied on in the court below." These provisions are substantially incorporated into the Code, of this state, of 1868, See Chap. 130 sec. 1. The last clause of the section just cited it seems was not contained in the Code of 1819. The first we have been able to find of it is in the Code of Virginia of 1849-50. This section has made material changes in the law and practice prior to the enactment thereof. In the case of Legrand *vs.* the President and Trustees of Hamden Sidney College, 5 Mun. 324, the first clause of said section seems to have been considered, and construed as follows viz: "Though private acts of Assembly may be given in evidence, without being specially pleaded, they are not to be taken notice of judicially, by the Court, as public acts are but must be exhibited, as dockuments, if not admitted by consent of parties." This decision was made January 1817, and before the enactment of the last clause of the section. In this case of Somerville *vs.* Wimbish 7 Gratt. 205, the Court of Appeals of Va. in considering the latter clause of the section, determined that: "The judicial notice

to be taken of such a law, is the same that is to be given to laws of a general or public nature, and has reference to the hearing of the cause in the appellate forum, whether decided in the courts below, before or after the commencement of the revised statutes." In considering the demurrer to the amended declaration, if the acts incorporating the Defendant can be considered private acts it was competent for the Court to read and consider them in connection with the declaration on their being brought to the attention of the court by the plaintiff's attorney. See opinion of Judge Coalter in Stribling vs. Bank of the Valley 5 Rand. 171. The Defendant, when the Court was considering the demurrer, may have admitted the incorporation, and dispensed with the production of the acts of incorporation. The demurrer being overruled by the Court the Plaintiff could not file exceptions to the judgement of the Court, and show therein what was before the Court in considering the demurrer, or that the Defendant admitted the incorporation, and dispensed with the production of the Acts. Although it is not usual or ordinarily necessary or proper for the Defendant to except to the judgment of a court upan a demurrer to a declaration, still in this case it was competent for the Defendant to do so, and if the Acts of incorporation were before the Court, or the Defendant admitted that it had been made and was an incorporated railroad company by virtue of Acts of the Legislature, and dispensed with the production of the Acts, the Court could have so stated in the bill of exceptions.

The Defendant took no bill of exceptions to the judgment of the Court on demurrer, and as he took none, and might have done so perhaps we should presume that he acquiesced in the judgment of the Court so far as it involved the question of incorporation; and as it is possible there may have been good reason for overruling the demurrer so far as it involved that question, that reason may be taken to have existed. Judge Tucker's

opinion in White *vs.* Toncray, before quoted. It is in-
sisted before us by the counsel for the Plaintiff, that the
Defendant is an incorporated railroad company, and that
it was incorporated by acts of the Virginia Legislature,
and that these acts are in legal contemplation public
acts, and such as we shall notice *ex officio.* There are no
means by which we can determine this question except
by examining the acts which have been presented to us
and ascertaining their contents and character. Having
examined these acts with care it is proper for us in de-
termining the correctness of the judgment of the Court
below upon the demurrer to determine whether they are
public acts, such as we may notice *ex officio.* Upon the
principles involved in this question the authorities are
not agreed. The 61st Chap. of the Code of 1860 is un-
questionably a public law, and some of its provisions em-
brace incorporated railroad companies as we have seen,
and as must be admitted. The first act of the Legis-
lature of Virginia passed in relation to the Baltimore
and Ohio Railroad Company to which our attention has
been called was passed on the 8th of March 1827. The
preamble to the act recites that "Whereas, an act passed
the Legislature of Maryland entitled 'an act to incorpo-
rate the Baltimore and Ohio Railroad Company, in the
following words and figures, viz: The act of incorporation
is then set out, conferring a corporate name, with all
the powers, rights and privileges which other corporate
bodies may lawfully do for the purposes mentioned in
the said act, and providing that by that name it should
be capable of purchasing, holding, selling and convey-
ing property; and may sue and be sued. And after
thus reciting the Maryland act of incorporation, the Vir-
ginia law proceeds to enact "That the same rights and
privileges shall be, and are hereby granted, to the afore-
said company within the territory of Virginia, as are
granted to them within the territory of Maryland. The
said company shall be subject to the same pains and pen-
alties, as are imposed by that act; and the same rights,

1873.
June Term

Hart
v.
Baltimore &
O. R. R. Co.

privileges and immunities which are reserved to the State of Maryland, or to the citizens thereof, are hereby reserved to the State of Virginia and her citizens; except that the said company shall not make, or authorize to be made, any lateral road or roads within the territory of Virginia, without the consent of this Legislature; that the said road shall not strike the Ohio at a point lower than the mouth of the Little Kanawha, on said river; that the words "or other property" in the 17th section of the above recited act shall in no case be construed to extend to any property other than materials for the construction and repair of said road, or other works or necessary buildings; and that in obtaining a right to any lands through which the contemplated railroad may be extended, or to any timber, gravel, stone, or earth which shall be necessary for the construction or repair of said road, or other works or necessary building within this Commonwealth, "The Baltimore and Ohio Railroad Company" shall proceed in the same manner as is prescribed in the 7th, 8th, 9th, 10th and 12th secs. of an act entitled, "An act prescribing certain general regulations for the incorporation of turnpike companies," passed February 7th, 1817, except also that any injury which may at any time be done within the limits of Virginia to said road or other works or necessary buildings, shall at all times be punished according to the laws which may be in force in this Commonwealth, for the protection of the public works of the Commonwealth of Virginia." The act of the Maryland Legislature, recited in the act above quoted, was passed the 28th of February 1827, and the 22nd sec. thereof provides "That if the said road shall not be commenced in two years from the passage of this act, and shall not be finished within this State in ten years from the time of the commencement thereof then this act shall be null and void." The act passed the 7th day of February 1817, "prescribing general regulations for turnpike companies"

1873.
June Term.

Hart
v.
Baltimore &
O. R. R. Co.

referred to in said act of 1827, provides in the said 7th, 8th, 9th, 10th and 12th secs. thereof, how the road may be laid out, and land taken from the owners, by condemnation, without the consent of the owners; by whom and in what manner the damages to the owners shall be estimated, &c. It also provides how wood, stone, gravel, or earth may be taken by condemnation for making or repairing the road, &c: And it is a public act in force at the passage of the act of 1827, and the said public act of 1817, from the 7th to the 12th secs. inclusive, except the 11th, is in effect made a part of the said act of 1827 by its provisions. On the 6th of March 1827, the Legislature of Virginia passed an act providing among other things that if any person or persons shall wilfully and maliciously burn or set fire to any bridge of the value of one hundred dollars, built by authority of the Commonwealth, or by any corporation, every such person, his aiders and abettors shall be deemed guilty of felony, &c. This act was also in force on the 8th of March 1827. On the 23rd of March 1836 ,the Legislature of Virginia passed an act entitled "An act prescribing the punishment of offences committed on Railroads." This act makes it a felony for any person to wilfully and maliciously remove or disturb any of the constructions or fixtures, or place designedly and with evil intent any obstruction on the line of any railroad now constructed, or constructed subsequent to its date. Other acts similar in substance have at different times been passed by the Legislatures of Virginia and this State and are still in force. In 1836, 1837, 1838 and 1839, acts were passed by the Legislature of Virginia authorizing subscriptions by the city of Wheeling and the State of Virginia to be made for large amounts of the capital stock of the Defendant. The acts authorizing subscriptions to be made for the State for the stock of Defendant were conditional. On the 19th day of March 1839, the Legislature of Virginia passed an act entitled, "An act to authorize the Baltimore and Ohio Railroad Company to construct their works

across the Potomac River above the town of Harpers Ferry." And the 3rd sec. of this act prescribed a penalty for exacting illegal tolls for the transportation of persons or property. The act of 1838 extended the time for the completion of Defendant's road through Virginia upon conditions therein mentioned. In 1844–45 and in 1845–46, other acts were passed touching the Defendant and its road, conditional in their character mostly if not altogether, among which is one containing a provision that the right of taxation shall not be exercised against the company upon its property except upon a specified contingency. On the 6th of March 1847, the Legislature of Virginia passed an act entitled, "An act to authorize the Baltimore and Ohio Railroad Company to construct the extension of their railroad through the territory of Virginia." The 6th sec. of this act provides that the Defendant "shall be subject to the provisions of the act of Assembly passed the 11th day of March 1837, establishing general regulations for the incorporation of railroad companies, with respect to that portion of their road or other improvements now or hereafter to be constructed within this Commonwealth." The 7th sec. of the act provides that the stock, property and profits of the Defendant, so far as the same may be or accrue in Virginia, shall be subject to general taxation in like manner and on the same footing with other similar companies in the State: Provided however that said taxing power should not be exercised until and unless the net income of the Defendant shall exceed six per centum upon its capital invested. The 9th sec. of the act authorizes the city of Wheeling to subscribe to the capital stock of Defendant not exceeding one million of dollars, upon such terms as may be agreed upon between the Council of the city and the Defendant. The 11th sec. of the act provides that as a condition upon which the powers and privileges of the act are granted, the Defendant shall accept the act within six months and enter upon the construction and continuation of the road

within three years and complete the same within twelve years from the passage of the act; and the act is made to take effect from its passage.   In March 1850, the Legislature of Virginia passed an act entitled "An act concerning the city of Wheeling and the Baltimore and Ohio Railroad Company."   This act proposed a mode for the settlement of a difficulty between the city of Wheeling and the Defendant.  The city of Wheeling was incorporated prior to 1827.

In the case of the Baltimore and Ohio Railroad Company vs. Gallaheu's adm'rs decided July 1855, it was decided by the Court of Appeals of Virginia that, "the Baltimore and Ohio railroad company is a corporation of the State of Virginia," and that it may be sued in Virginia on contracts made therein, 12 Gratt. 655.   In this case Judge Allen delivered the opinion of the Court, and all the other judges concurred therein, and in that opinion he declares that the Defendant under the said laws of 1827 is a Virginia corporation, and its powers within the territory of Virginia are derived from the grant contained in the Virginia law.   And he further says; "It is judicially known to the Court that the road traverses the territory of Virginia to a greater extent than it does through the State of Maryland."   In the case of Stribling vs. the Bank of the Valley, 5 Ran. 132, the syllabus of the case on the subject under consideration is "the laws establishing Banks in Virginia, are *public* laws, and may be noticed by the courts *ex officio*."   In the case of Hays vs. Northwestern Bank of Virginia, 9 Gratt. 127, it was decided by a full court that, "The act incorporating the Northwestern Bank of Virginia is a public act, of which the courts will judicially take notice: and in an action by the bank it is not required to prove its incorporation."   In the note to 6 Bac. Abr. 364 tit. statute, F., attributed to Mr. Abbott, this among other things is stated, "3rd.   In a general act, there may be a private clause, and a private Act, if recognized by a public Act, must afterwards be noticed by the courts,"

1873.
June Term.

Hart
v.
Baltimore &
O. R. R. Co.

2, Tenn. Reps. 567, 5 Ran. 138, 139, Buller in his Nisi Prius p. 224 says, that though it be regularly true, that a private law shall not be taken notice of unless it be shown; yet it will be otherwise, in case such private law be recognized by a public one, Samuel vs. Evans 2, Tenn. R. 574. See also as to judicial notice, Code of West Virginia Chap. 13 sec. 2, 3 and 4. In The Miners' Ditch Company vs. Zellerbach et al decided by the Supreme Court of Callifornia it was held that, "There are several classes of corporations: 1 Municipal, the object of which is to promote the public interest; 2 Private, the object of which is to promote private interests; 3 Quasi public, which are technically private, but have in view great public entérprise, in which the public interests are directly involved to such an extent as to justify conferring upon them important governmental powers, such as the exercise of eminent domain." 37 Cal. Rep. 543; American corporation cases by Withrow Vol. 1, 250. Ch. J. Sawyer delivered the opinion of the Court and he says expressly that railroad, turnpike and canal companies are quasi public corporations.

The present Constitution of this State provides that every railroad corporation organized or doing business in this State shall annually, by their proper officers, make a report under oath to the Auditor of public accounts, or some officer to be designated by law, stating the condition of their affairs, the operations of the year and such other matters relating to their roads as may be prescribed by law. And that the Legislature shall pass laws enforcing by suitable penalties this provision. The Constitution further declares that railroads heretofore constructed, or that may hereafter be constructed in this State are public highways, and shall be free to all persons for the transportation of their persons and property, under such regulations as shall be prescribed by law; and that the Legislature shall from time to time, pass laws applicable to all railroad corporations in the State, establishing reasonable maximum rates for the

transportation of passengers and freights, and providing for the correction of abuses, the prevention of unjust discrimination between through and local freight and passenger tariffs, and for the protection of the just rights of the public.   See Art. 11, secs. 7 and 9 of Constitution of West Virginia.

The case of Swan *vs.* Williams, 2 Michigan R. 427, denies that railways are private corporations.   In this case it was held that "Property of individuals taken by railroad corporations for the purpose of constructing their roads, is in legal contemplation, taken not for private use, but for public purposes, and the power of government to delegate the exercise of the eminent domain to effectuate such purposes, from the universality of its exercise, is no longer an open question.   Although railroad corporations receive tolls, as compensation for the carriage of persons and property over their roads, they are not therefore to be considered private corporations, the purpose designed by government in these roads, being the use of the public, and not revenue."   This decision was made in 1853.   Judge Martin in delivering the opinion of the Court in this case says: "In the creation of this class of corporations, public duties and public interests are involved, and the discharge of these duties, and the attainment of these interests, are the primary objects to be worked out through the powers delegated to them.   To secure these, the right of pre-eminent sovereignty is exercised by the condemnation of lands to their use—a right which can never be exercised for private purposes."   Other acts of the Legislature might be cited, but we deem it unnecessary.   All the acts of the Virginia Legislature above cited were printed and published by the authority of the Legislature with the public acts of each session.

After much reflection we have concluded, and it is our opinion, that the acts of the Legislature of Virginia conferring corporate powers upon the Defendant are such public acts as that we should take notice of them *ex officio*,

in determining this cause. It is a part of the public history of this State that the Baltimore and Ohio Railroad was the first great railroad that ever penetrated the territory embraced within her limits, and that that part of it within this State, east of Cumberland, was commenced and constructed by the Defendant after the passage of the act of the Legislature of Virginia of 1827, before cited, and before the passage of the said act of the 6th of March 1847, and was done by the Defendant under and by virtue of the authority conferred upon it by the said act of 1827. See case of B. & O. R. Co. *vs.* the Supervisors and sheriff of Marshall Co., 3 W. Va. R. 319, and the B. and O. R. Co. *vs.* Gallahue's adm'rs, 12 Gratt. 655. The time fixed by law within which the Defendant should complete its road to the Ohio river in this State had expired long prior to the passage of the said act of 1847. It is also a part of the public history of this State that after the passage of the act of 1847, the Defendant constructed principally all its road within the State, west of Cumberland, and to the city of Wheeling, within the time prescribed by the act of 1847, and that it was done under and by authorily of the acts of 1827 and 1847 aforesaid. See B. & O. R. Co. *vs.* the Supervisors, 3 West Va. R. 319. B. & O. R. Co. *vs.* Gallahue's adm'rs, 12 Gratt. 655. And that from the completion of the road to the present it has been used by the Defendant, and has constituted the chief great thoroughfare of trade and travel into, through and from the State, and that by this great road passing through her boundaries some 200 miles the natural wealth of the State has been greatly developed and her citizens much benefitted. In first Greenleaf on Evidence, Part 1, Chap. 2, sec. 5, it is stated that it is not necessary to prove "any matters of public history affecting the whole people." Bank of Augusta *vs.* Earle, 13 Pet. 519–590, 1 Starkie Ev. 211 (6th American edition). The same author in section 6 of same Chapter, Part 1, says: "In fine, courts will generally take notice of whatever ought to be known, within the

1873.
June Term.

Hart
v.
Baltimore &
O. R. R. Co..

limits of their jurisdiction. In all these, and the like cases, where the memory of the Judge is at fault, he resorts to such documents of reference as may be at hand." Gresley on Ev. 295.

In the case of Gallahue's adm'rs. and the Baltimore and Ohio Railroad Company, Judge Allen holds that the Defendant had accepted the act of 1847, and thereby submitted itself to the provisions of the general law regulating railroad companies incorporated by Virginia.

In the case of the Baltimore and Ohio Railroad Company (the Defendant) vs. the Supervisors and Sheriff of Marshall county, decided by the Supreme Court of Appeals of this State January 1869, it is expressly held by Judge Maxwell, who delivered the opinion of the Court, that the Defendant accepted the act of 1847 together with the act of 1837 aforesaid as far as applicable, and that they became parts of the charter of the Defendant along with the act of 1827: 3 West Virginia R. 319,

This was an injunction case to enjoin the collection of taxes from the Defendant in the county of Marshall through which the Defendant's road passes. The act of 1847 failed to specify in what manner the Defendant should accept its provisions, or to require notice of the acceptance to be filed any where or to be given to any person. The Legislature of this State, by joint resolution duly passed on the 28th day of February 1871, and published by authority of law with the public Acts, recognized the decisions of the courts of Virginia and of this State, above cited as to the acceptance of the act of 1847, and in effect declared that the Defendant did accept said acts, and required the Attorney-General, unless the Defendant communicated to him its unreserved recognation of the fact that the said act of the Legislature of Virginia passed the 6th day of March 1847 is binding upon it, and that it (Defendant) is subject thereto &c., to institute legal proceedings against Defendant by *quo warranto* or other proceedings most effective to enforce compliance on the part of Defendant with the several provisions of its char-

ter; and further directed the Attorney-General that should the Defendant make such communication as mentioned to deliver the same to the Secretary of State, by whom it should be filed in his office. The Defendant, afterwards, by a writing dated the 20th of June 1871, signed by its President, and attested by its seal, communicated to the Attorney-General its unreserved recognition of the fact that the said act passed the 6th of March 1847 is binding upon it, and that it is subject to its provisions. This communication, in pursuance of said resotion and by virtue thereof, was duly filed with the Secretary of State, and must be regarded as part of the public history of the state in connection with Defendant and its liability to taxation, and this Court can take judicial notice thereof. Under the circumstances we feel fully authorized and bound to hold that we must *ex officio* take notice of and know that the Defendant is not only an incorporated railroad company within this state, but that it was, when the Chap. 61 of the Code of Virginia took effect, governed by the said act passed by the Legislature of Virginia on the 11th day of March 1837, prescribing certain general regulations for the incorporation of railroad companies, so far as the same can apply.

We do not think it was material or necessary for the Plaintiff to allege in his declaration that the rates prescribed by sec. 19 of Chap. 61, aforesaid, applied to the road of Defendant, nor that different rates had not been prescribed : because under the provisions of the 1st and 18th secs. of said chapter, the Defendant was liable to be sued if it demanded and received from the Plaintiff more than was lawful for transporting the saw mill from and to the places named in the declaration; and it was also liable whether different rates from those named in sec. 19, had been prescribed by law or not. If Defendant was and is governed by the act of 1837 aforesaid, it is liable for demanding and receiving more toll than is lawful, whether different rates from those mentioned in

44

sec. 19 were prescribed by law or not. The cause of action was the demanding and receiving more toll than was lawful. The declaration states the weight of the saw mill, the time and place where delivered to Defendant for transportation, and the place to which it was to be transported, the distance, and the amount which was demanded and received by the Defendant, and that it was more than was lawful, contrary to the statute in such case made and provided. This we think was sufficient notice of the cause of action to the Defendant to enable it to make all just and proper defences, and is in this respect a substantial compliance with the law. The language of the statute has been observed and adopted in the declaration in this particular. The demurrer admits the truth of each material allegation of the declaration, and taking the allegation of the declaration in this respect as true, it is substantially sufficient. On a demurrer (unless it be to a plea in abatement) the court cannot regard any defect or imperfection in the declaration or pleadings unless there be omitted something so essential to the action or defence that judgment according to law and the very right of the cause cannot be given. 171 Chap. sec. 31, Code of 1860 of Va., Code of West Va., Chap. 125, sec. 29.

For the reasons before stated we think the amended declaration in this cause is substantially sufficient, and that the Circuit Court did not err in overruling the demurrer.

In the argument it was suggested by counsel for Appellee, that the appeal in this case was improperly taken, that this case is not within the appellate jurisdiction of this Court. We have considered this question, and have determined that the appeal was properly taken, and that we have jurisdiction and authority to adjudicate the questions arising upon the record, because we are of opinion that the controversy in the cause is "concerning the right of a corporation to levy tolls."

For these reasons the judgment of the Circuit Court must be affirmed, and the Appellee recover against the Appellant his costs in this Court expended, and damages according to law.

HOFFMAN, MOORE and PAULL, Judges, concur in the foregoing opinion.