# CHARLESTON.

PICKENS'S EX'RS *v.* KNISELEY *et al.*

Submitted Sept. 17, 1892.—Decided Oct. 6, 1892.

1. DEMURRER—DISMISSION—AMENDMENT.

It is not error to omit giving leave to amend upon dismissing a bill upon demurrer, where the record does not disclose that any amendment improving the bill can be made.

2. DEMURRER.

Demurrer discussed.

3. HUSBAND AND WIFE—MARRIED WOMAN—SEPARATE ESTATE—CONSTRUCTION OF STATUTE.

Land conveyed to a married woman in 1866, without anything in the conveyance to render it separate estate, is not separate estate. Chapter 66 of the Code of 1868 did not make it separate estate. A bond of the husband and wife, made in 1868, does not charge the wife's estate in such land. Such bond is void as to the woman.

4. HUSBAND AND WIFE—MARRIED WOMAN—SEPARATE ESTATE—CONSTRUCTION OF STATUTE.

The bond of a married woman is void at law, and it is void in equity also, except as to her separate estate.

5. HUSBAND AND WIFE—MARRIED WOMAN—SEPARATE ESTATE—CONSTRUCTION OF STATUTE.

The land so conveyed is sold under decree to pay a debt of the woman. The surplus proceeds remain real estate, and, as was the land before sale, not separate estate of the woman, free of the husband's right. Said bond can not be enforced against such surplus as the wife's estate.

6. CONVERSION.

A conversion of land into money by mere act of the law, as by sale under decree of a court, works a conversion into personalty only so far as is necessary to accomplish the particular purpose of the sale.

7. HUSBAND AND WIFE—MARRIED WOMAN—SEPARATE ESTATE—CONSTRUCTION OF STATUTE.

The husband and wife execute a deed of trust conveying the land above mentioned to secure a debt, which is void as to the wife, but valid as to the husband. The husband was vested, by the law in force in 1866, with a freehold estate in such land,

and the deed of trust created a lien on that estate and on the interest of the husband in the fund arising from its sale as above stated.

*J. H. Woods* for appellant cited 23 W. Va. 197; 25 W. Va. 288, p't 3 Syll.; Id. 560, 564; 26 W. Va. 225; 32 W. Va. 25, 30; 2 Min. Inst. (Ed. 1878) 994; Id. 1017 5c.; 29 W. Va. 23; Code (1891) c. 66; 14 W. Va. 322; Id. 332; 22 W. Va. 404, Syll. p'ts 1, 4; Id. 412, 417; 29 W. Va. 504; 19 W. Va. 366; 18 W. Va. 103; Min. Inst. 311; 1 Lom. Dig. 63; 25 W. Va. 815; 30 W. Va. 505.

*J. Bassel* and *Dayton & Dayton* for appellees cited Code (1868) c. 66; 14 W. Va. 322.

BRANNON, JUDGE:

On 28th August, 1866, Stephen Arnold conveyed to Sarah Jane Kniseley, wife of L. M. Kniseley, land in Barbour county. On 15th December, 1868, Kniseley and wife executed to James Pickens a bond for one thousand six hundred and fifty dollars, and a deed of trust upon said land to secure its payment. On 9th September, 1871, said Kniseley and wife executed to Pickens a bond for one thousand two hundred dollars, and a deed of trust upon said land to secure it. Afterwards Pickens brought a chancery suit to enforce said deeds of trust, and the case came to this Court on appeal, and one of said deeds of trust (that for the one thousand six hundred and fifty dollar bond) was held void as to Mrs. Kniseley, and the other was held valid, and the land was sold for the payment of the bond of one thousand two hundred dollars secured by the valid deed of trust; and, there remaining a surplus after payment of said debt, Pickens's executors filed in said cause a petition seeking to subject that surplus to pay said bond for one thousand six hundred and fifty dollars. Upon demurrer this petition was dismissed, and Pickens's executors appeal.

The first point made against the decree is that it dismissed the petition absolutely, whereas it ought to have given leave to amend. The petition presented the petitioners' case, and the defendants, thinking that it presented

no case calling for relief, chose to defend by demurrer. A demurrer was the proper mode of defence in such case. A demurrer admits the facts stated in the pleading to which it applies, but insists that in law it does not call for the relief which that pleading seeks. It thus raises an issue, not of fact, but of law; and logically the demurrant stakes his case upon the issue raised by his chosen mode of defence; and the plaintiff, by filing his bill and by accepting the issue of law tendered by the demurrer by joining therein, stakes his case upon such issue; and neither can complain that final decree is made upon the issue so chosen and made by the parties.

"The word 'demurrer' comes (as Lord Coke has said) from the Latin word '*demorari*'—to abide; and therefore he that demurreth in law is said to abide in law—*moratur* or *demoratur in lege*. He will go no further, until the court has decided, whether the other party has shown sufficient matter in point of law to maintain his suit." Story, Eq. Pl. § 441.

"The person against whom a bill is exhibited, being called on to answer the complaint made against him, may defend himself by demurrer, by which he demands the judgment of the court whether he shall be compelled to answer the bill or not." Mitf. Eq. Pl. 106; Steph. Pl. 82.

These elementary definitions of a demurrer show that upon a demurrer final decree or judgment may rightly be given. "A demurrer admits the truth of the facts contained in the bill, or in the part of the bill to which it extends, and therefore, as no fact can be in question between the parties whilst the demurrer is pending, the court may immediately proceed to pronounce its definite judgment, which, if favorable to the defendant, in the absence of a plea filed with the demurrer, puts an end to so much of the suit as the demurrer extends to, although, when the court has signified its opinion to overrule the demurrer, it may be withdrawn, as we have seen is the practice at law." 4 Minor, Inst. 1278. "A demurrer, if allowed, consequently prevents any further proceeding." Mitf. Eq. Pl. 14.

Under chancery practice, unaffected by statute, if a demurrer is overruled, unless it be withdrawn, there is a de-

cree upon the bill, the withdrawal of the demurrer removing the issue of law raised by it; and courts allowed the demurrer to be withdrawn, and plea or answer to be filed. Now, by section 30 c. 125, of the Code, upon overruling a demurrer there can not at once be a decree, but there must be a rule upon the defendant to answer, and only upon his failure to answer can there be a decree upon the demurrer. At common-law, when a demurrer to a declaration is overruled, judgment for plaintiff follows, unless the defendant withdraw his demurrer, and plead matter of fact, which he might do. 2 Tuck. 268; 4 Minor, Inst. 622, 624; Bart. Law Pr. 185.

The common law required a single issue of law or fact, and hence, when one issue was made, the case was determined upon that issue. Now, however, under section 20, c· 125, of the Code, a defendant may plead as many several matters of law or fact as he may think necessary; and therefore I should think that a defendant whose demurrer is overruled may, without withdrawing it, plead further to the action.

As to a plaintiff at law, unless he obtain leave to amend, judgment goes against him, if the demurrer to his declaration is held good. 2 Tuck. 268; *Hart* v. *Railroad Co.*, 6 W. Va. 336. As to a plaintiff in equity, the same may be said, unless he amends decree for the relief warranted by the facts of the bill is pronounced against him. "Where the demurrer is allowed to the whole bill, that ends the case, and no further proceedings can be had; but when the bill is susceptible of amendment the case will not be dismissed, but plaintiff will be allowed to file an amended bill." Bart. Ch. Pr. 357; 1 Daniell, Ch. Pr. 419. Decree upon demurrer is final and *res judicata*. *Corothers* v. *Sargent*, 20 W. Va. 351. Amendments are allowed liberally, but the party needing them must ask leave to make them, as he alone knows whether his proofs will justify them. Therefore I see no error in the omission to allow petitioners to amend their petition, they not asking leave to do so.

For the contention that the court should have allowed an amendment instead of decreeing the absolute dismissal of the bill, we are referred to *Atkinson* v. *Sutton*, 23 W. Va.

197; *Lamb* v. *Cecil*, 25 W. Va. 288; *Doonan* v. *Glynn*, 26 W. Va. 225; *Love* v. *Tinsley*, 32 W. Va. 25 (9 S. E. Rep. 44)— some of them holding that there should not be a final decree without leave to amend. They do not help the appellants. They are cases where it appeared from the record manifest that the parties were entitled to the relief sought, but on account of defect of pleadings, which could be amended, or of documentary evidence, which was attainable, justice could not be done; but in this case no such call for amendment appears from the record, but, on the contrary, it appears almost to a certainty that no amendment could be made to cure the case of the petitioners to make Mrs. Kniseley's interest in the fund liable.

Now we reach the merits. Did the court err in dismissing the petition upon demurrer? It is a principle of the common-law, universally recognized, that a married woman can not make contracts. Her contract is absolutely void. *Stockton* v. *Farley*, 10 W. Va. 171; *Cary* v. *Burruss*, 20 W. Va. 574; *White* v *Manufacturing Co.*, 29 W. Va. 385 (1 S. E. Rep. 572); 1 Minor, Inst. 337; 1 Rob. Pr. (New) 216; Kelly, Cont. Mar. Wom. § 6, c. 6. And this legal incapacity to contract has not been removed by chapter 66, Code 1868. Opinion in *Stockton* v. *Farley, supra;* opinion by Green, J., in *Bruff* v. *Thompson*, 31 W. Va. 23 (6 S. E. Rep. 352); opinion *Cary* v. *Burruss*, 20 W. Va. 576, and cases cited; Kelly, Cont. Mar. Wom. c. 6, § 6; 2 Bish. Mar. Wom. § 232.

The object of sections 2 and 3 of chapter 66 of said Code was to enable her to hold property owned by her at marriage, and take property during coverture, and hold such property free from the marital rights of her husband under the common law, and not to enlarge her capacity to contract generally. The language of section 3 confers no power to contract further than to convey separate estate. Section 13 does confer upon a wife living separate and apart from her husband a power to contract, and thus removes her legal disability to contract. *Peck* v. *Marling's Adm'r*, 22 W. Va. 708.

I speak of section 13 as it was before the act of 1891, striking out the words, "living separate and apart from her

husband," under which change a question will arise, not pertinent here, whether the rule in *Peck* v. *Marling's Adm'r* will still continue, or whether any woman in business may contract generally or not at all.

But, though a married woman's obligation is void at law, yet courts of equity, and only courts of equity, hold it valid as to her separate estate, and enforce payment out of it. *Stockton* v. *Farley*, *supra*; *Patton* v. *Bank*, 12 W. Va. 587; *Radford* v. *Carwile*, 13 W. Va. 607; *Hughes* v. *Hamilton*, 19 W. Va. 394; *Howe* v. *Stortz*, 27 W. Va. 555; Bart. Ch'y Pr. 1039; Wells, Mar. Wom. 539. She can not be sued at law upon her obligation made during coverture, if she live with her husband. *Stockton* v. *Farley*, 10 W. Va. 171; *Tavenner* v. *Barrett*, 21 W. Va. 658; *Curry* v. *Burruss*, 20 W. Va. 574. Even a judgment in such case is void. *White* v. *Manufacturing Co.*, 29 W. Va. 385 (1 S. E. Rep. 572). The validity and force of such an obligation in equity operate only as to the wife's separate estate, and not upon her as a person. She is deemed to contract only as to the *res* or separate estate, and not to bind herself personally and generally like an unmarried person. 2 Bish. Mar. Wom. § 842. Therefore, except as to her separate estate, such obligation is void in equity as well as at law; if there be no separate estate, it can not be collected. 2 Story, Eq. Jur. § 1397.

From these principles it follows that the bond of one thousand six hundred and fifty dollars given by Kniseley and wife, was absolutely void as to the wife at law, and void also in equity and incapable of enforcement, unless the fund sought to be subjected by the petition is the wife's separate estate.

Then, is it her separate estate? On 28th August, 1866 a tract of land was conveyed to Sarah Jane Kniseley, then a married woman. It was sold under decree to satisfy a debt created by a deed of trust, and, there remaining a surplus from its sale after satisfying the decree, the petition was filed to subject that surplus to the payment of the bond given on 28th August, 1866, for one thousand six hundred and fifty dollars by Kniseley and wife to Pickens. The deed conveying the land did not contain any language

to create a separate estate, and the conveyance dating before the enactment of chapter 66 of the Code of 1868, is to be tested by the common law in force at its date. By that law the marital rights of Mrs. Kniseley's husband attached to the land at once upon the execution of the deed to her, and that right gave him possession and the rents and profits during their joint lives, at least, with an estate by the courtesy for his life, if he survived her, if they had issue. 1 Minor, Inst. 311; 1 Lomax, Dig. 63; *Laidley* v. *Land Co.*, 30 W. Va. 505 (4 S. E. Rep 705); *Land Co.* v. *Laidley*, 32 W. Va. 135 (9 S. E. Rep. 61); opinion *Dejarnette* v. *Allen*, 5 Gratt. 513; opinion *Wyatt* v. *Smith*, 25 W. Va. 815; 1 Bish. Mar. Wom. § 536; *Merritt* v. *Hughes*, *supra*, p. 356; (15 S. E. Rep. 56).

These considerations repel the idea that this land was Mrs. Kniseley's separate property. That it is not her separate property is pointedly settled by the case of *Laughlin* v. *Fream*, 14 W. Va. 322, holding that a deed of land made in 1855 to a married woman does not give her a separate estate, and that chapter 66 of the Code does not convert it into a separate estate. Also in *Laidley* v. *Land Co.*, 30 W. Va., 505 (4 S. E. Rep. 705.)

But, the land having been sold, is the money arising from it different from the land itself? Having been sold in 1890, was it thereby converted into personalty, and did Mrs. Kniseley then take it as such, so that it is separate estate under chapter 66 of the Code then in force? Or does it retain the character of the land from which it proceeded, and remain not separate estate? I think it retains the character of the land. The sale did not convert it into personalty.

In 3 Pom. Eq. Jur. § 1167, it is laid down that, where land is sold by order of court, the surplus, after satisfying the purpose of the sale, is always regarded as real estate; and that it is a fixed principle, on which the court always proceeds, that the character of the property is changed only so far as necessary to accomplish the particular purpose of the decree. See opinion in *Fowler* v. *Lewis*, *supra*, p. 112 (14 S. E. Rep. 460); 1 Lomax, Ex'rs. 222.

Mr. Bishop, in his Law of Married Women (volume 1,

§ 607) holds the same doctrine as to conversion by act of law, stating the law to be that "when the law turns the wife's real estate into money, and her volition has not been put forth to give character to the fund, it will be dealt with as belonging to the husband and wife in the same proportions as the land did before sale," and that, "if the husband has a life estate in the land before sale, he will have a life estate, and no more, in the fund." See *Turner* v. *Dawson*, 80 Va. 841, and opinion in *Ashby* v. *Smith*, 1 Rob. (Va.) 59.

Thus, in this fund, the husband has an interest—an additional reason for excluding the idea of its being a separate estate. Hence the sale and its date are not material. And again, if we could say that the sale effected a conversion into personalty, and that the wife, upon the conversion, became vested with the surplus as her separate estate, we could not hold it liable to this bond, because it was made years before the sale; and, as a debt contracted by a married woman is charged on her separate estate because of her intention, actual or presumed, that it should be paid out of that estate, and is not a general personal liability, we could not attribute such intent as to estate not existent at the date of the bond. Her obligation does not bind after-acquired separate estate. 3 Pom. Eq. Jur. § 1123; *Crockett* v. *Doriot*, 85 Va. 240 (3 S. E. Rep. 128); *Lee* v. *Cohick*, 39 Mo. App. 672; *Pike* v. *Fitzgibbon*, 17 Ch. Div. 454. And also the bond was void as to the woman when made. It could not afterwards become valid.

Another question arises. Though the fund can not be made liable as Mrs. Kniseley's property, yet, as her husband had an estate of freehold in the land, as shown above, and the deed of trust is binding on that estate, can not his interest in the fund be made liable to it? I think it can. *Wyatt* v. *Smith*, and other cases, *supra*. But against subjecting it under this view it is said the former decision of this Court in this case 29 W. Va. 1 (11 S. E. Rep. 932) stands as a bar under the principle of *res judicata*.

Whatever views might be held as to whether this estate of the husband could have been subjected under the bill in the case, a reference to the report of such decision will show

that the opinion and syllabus held that the interest of the husband, called there, "curtesy initiate" could not be subjected under the bill, and that the bill could not be amended to subject it, as it would be to make a new case. If, then, the matter of the liability of the husband's estate in the land was not involved in the bill, and could not have been adjudicated, surely the adjudication could not be *res judicata* as to that matter.

Another point made against subjecting the husband's interest is that the petition seeks no such relief, but is based solely on the theory that the fund is wholly the wife's property; expressly so alleges, not mentioning or asking to subject any interest of the husband, but seeks to subject it only as the wife's property. But the facts from which the husband's right and estate and its liability under the law arise 'are in the petition, and there is a prayer for general relief; and the general rule is that, if the facts be contained in the bill, though the specific relief asked for be refused, the proper relief which those facts call for under the law may be given under the prayer for general relief.

The husband's interest in the fund—not the whole of it, but its interest during his life—is liable to said debt. Therefore the decree dismissing the bill, while right as to Mrs. Kniseley, is erroneous as to her husband, and it is reversed, and the cause remanded, that the fund may be subjected as herein indicated.

REVERSED. REMANDED.