# CHARLESTON.

DICKEL *v.* SMITH *et al.*

Submitted June 10, 1893—Decided December 11, 1893.

1. MARRIED WOMEN—INSANITY.

The real estate of an insane married woman during her coverture and insanity can be charged with indebtedness only to the same extent, as if she were not insane, and neither her committee nor a court of equity can subject the *corpus* of such real estate to debts or claims, with which it would not be chargeable if she were sane.

2. MARRIED WOMEN—INSANITY—COMMITTEE—FRAUD.

If the committee of an insane married woman file his petition under section 44, c. 58, of the Code of 1868, for the purpose of selling, and sell, her real estate for debts, with which it is not chargeable, he is guilty of constructive fraud against her estate, and all the proceedings of the court in relation thereto are void for want of jurisdiction of the subject-matter.

3. MARRIED WOMAN—INSANITY—FRAUD.

A purchaser of such property under such void decrees, being a party to the petition, will be presumed to have full knowledge of the fraud vitiating his title, and he will be held to be a trustee of such property for the benefit of such insane married women.

J. A. HUTCHINSON and W. N. MILLER for appellant.

I.—*By what rules the validity of the sale and conveyance must be tested.*—26 Gratt. 517; 26 W. Va. 30.

II.—*No jurisdiction of the subject-matter.*—3 Pom. Eq. Jur. §§ 1311–1314 and note; 15 S. E. Rep. 997; 14 W. Va. 322; 30 W. Va. 555; 14 Am. Eng. Ency. Law. 393, and cases cited; Code, c. 58, s. 46; 27 N. E. Rep. 1110; 16 S. E. Rep. 159. *No jurisdiction of the person.*—Code, c.

125, s. 13; 26 W. Va. 31; 15 S. E. Rep. 173. *The proceedings were irregular.*—1 Rand. 401; 7 W. Va. 187; 24 Gratt. 302.

MERRICK & SMITH and VAN WINKLE & AMBLER for appellee:

I.—*The appeal was improvidently awarded, only one of several matters having been adjudicated.*—27 W. Va. 216; 29 W. Va. 131.

II.—*Insanity fixes a status and dissolves a trust. In decreeing charges against the estate of an insane wife, the powers of the court, in administering the trust, are not impaired by the disabilities of the lunatic.*—95 Ill. 552; 37 Am. Rep. 111; 41 Pa. St. 195; 80 Am. Dec. 606; 2 Story's Eq. §§ 1362–4.

III.—*Sale may be had to satisfy "demands against the estate."* —Code, (1868) c. 58.

    a.—*The committee shall be allowed, by commissioner of accounts, all proper charges and compensation.*—Code, c. 87, s. 17.

    b.—*Basis of such accounts is not determined; in this state.*— 26 W. Va. 177.

    c.—*Accounts confirmed by County Court must stand until surcharged or falsified.*—Code, c. 87, s. 22; 28 W. Va. 412.

    d.—*Charges against lunatic's estate are based on what the lunatic would naturally do, if sane.*—Busw. § 104; 11 Paige 257; 2 Barb Ch'y 326; 102 Pa. St. 50; 5 Ch. App. 699; 5 Russ. Ch'y 154; 2 Mer. 99; Cr. & Phil. 76; 6 Ch. App. 226; 22 Pa. St. 466; 34 Pa. St. 377; 30 Ia. Am. 366; 5 Ala. 517; Busw. § 284; 102 Pa. St. 589; 2 Jones Eq. 411; 1 Ves. 156; Id. 196; 131 Mass. 341.

IV.—*There was jurisdiction on the petition.*—32 W. Va. 289–94; 34 W. Va. 362; 28 W. Va. 224; 130 U. S. 354; 124 U. S. 220–1.

V.—*Error does not affect jurisdiction.*—113 U. S. 330 (*supra* p 28.)

VI.—*There was no fraud. Only actual fraud will vitiate the sale.*—1 Story's Eq. 252; 102 U. S. 372; 20 Wall. 175; 67 Mo. 247.

VII.—*Error in proceedings will not avoid sale.*—2 How. 341; 119 U. S. 450; 26 W. Va. 1.

VIII.—*If there had been error, the purchaser is protected by the terms of the statute.*—Code, Chap. 132, s. 8.

DENT, JUDGE :

The facts in this case are as follows, to wit: On the 1st day of October, 1874, Adam Hettick, now deceased, was appointed a committee to manage the estate of Delia Doer, an insane married woman confined in the asylum. She had no personal property, but the only property owned by her was the reversion of a certain house and lot on Third street, in the city of Parkersburg, in which her husband, Anton Doer, held a life estate, and was therefore entitled to the rents and profits thereof, and liable for the necessary repairs and taxes due thereon. Adam Hettick took possession of this property, and collected and disbursed the rents for a number of years. In the mean time the life-estate was sold under a deed of trust executed by Anton Doer, and W. H. Smith, Jr., one of the appellees, became its purchaser, Hettick still retaining possession, the purchaser brought suit in ejectment against him, and on the 2d day of January, 1882, recovered the possession and one hundred and fifty five dollars and twenty cents damages.

On the 11th day of April, 1882, said Hettick, as such committee, under section 43, c. 58, of the Code of 1868, filed his petition in the Circuit Court of Wood county, asking for a sale of the reversion of said property to pay alleged indebtedness of said Delia Doer, she still being insane. The indebtedness set out in said petition was as follows, to wit: Balance due petitioner on settlement, forty six dollars; amount due petitioner, fifty dollars; amount due petitioner for services, three hundred and fifty dollars; judgment of W. H. Smith, Jr., one hundred and fifty five dollars and twenty cents. W. H. Smith, Jr., was made a party to this petition.

On the 17th day of April, 1882, R. H. Smith was appointed guardian *ad litem* for Delia Doer, and filed his answer, and the court referred the case to Kinnard Snodgrass, one of its commissioners. He made his report, and on the 16th day of May, 1882, the court entered a decree confirming said report, and allowing against the estate of the insane

defendant the following debts : Adam Hettick, committee, forty six dollars and thirty seven cents; M. P. Amiss, executor of William Spencer, deceased, forty six dollars; Adam Hettick, committee, ten dollars and fifty cents; L. P. Neal, five dollars; Thomas Murphy, six dollars and fifteen cents; G. L. Later, two dollars and fifty cents; Joseph Sefferts, seven dollars; Phillip Dollinger, five dollars and twenty five cents; W. H. Smith, Jr. judgment, one hundred and fifty five dollars and twenty cents, and costs, thirty six dollars and eighty five cents; A. Hettick, services as committee, one hundred and fifty dollars—and ordered a sale of the reversion to pay said debts, appointing said Hettick commissioner to make the sale.

On the 10th day of July, 1882, the commissioner sold said property in accordance with said decree, and said W. H. Smith, Jr., became the purchaser for the sum of five hundred and twenty five dollars. On the 14th day of July, 1882, the Circuit Court entered a decree confirming said sale, and ordering distribution of the purchase-money on the debts decreed. No notice of the fact that Delia Doer was a married woman, except incidentally, is taken in said proceedings. Some time in 1890, Adam Hettick died, and Hubert F. Dickel, appellant, was appointed to succeed him as committee of Delia Doer.

On the 10th day of March, 1890, Anton Doer died, and shortly afterwards said Dickel, as such committee, brought an ejectment suit against W. H. Smith, Jr., and his tenants, to recover possession of said property for Delia A. Doer; and also filed the bill in this cause, setting out all the facts aforesaid, to which he made Lousia Hettick, administratrix with the will annexed of Adam Hettick, deceased, a defendant, and prayed, among other things, that the cloud on the title by reason of the decree aforesaid, and the deed made in accordance therewith, might be removed, and for general relief.

W. H. Smith, Jr., filed his answer to said bill, admitting substantially the facts contained therein, but claiming that the decrees under the petition of Hettick were valid and binding, and that therefore his deed for said property was good, and could not now be disturbed, by reason of section 18,

c. 83, of the Code, Louisa Hettick, administratrix of Adam Hettick, answered to the same effect. Some depositions were taken, but are not material to the determination of this case. On the 1st day of September, 1892, the Circuit Court of Wood county dismissed the bill as to W. H. Smith, Jr., and his tenants, M. L. & M. A. Jones. From this decree, this appeal was allowed.

The law of this state at the time of all these proceedings was that the *corpus* of the real estate of a married woman could only be affected or charged by a vendor's lien when reserved, or by a conveyance or specific lien created by deed, in which her husband has united with her, and which she executed after privy examination. "The common-law disability of a married woman to contract a debt effectually protects all her lands from liability." "The real estate not being her separate property, all her common-law disabilities with regard thereto are in full force and effect. *Radford* v. *Carwile*, 13 W. Va. 683; *Pickens's Ex'rs* v. *Kniseley*, 36 W. Va. 794 (15 S. E. Rep. 997).

The fact that she has become insane does not change the law as to the *corpus* of her real estate, nor as to the possession and control and sale of real estate not her separate property, and it can not be subjected by a court of equity, acting under section 43, c. 58, of the Code of 1868, to any other debts than those, to which it would have been liable, in case she had been sane. Insanity can not create a liability on real estate nor destroy coverture nor abrogate the marital rights of a husband.

This being the real estate of a married woman, not her separate property, her husband was entitled to the full control and possession thereof during coverture, notwithstanding her insanity, and her committee was neither entitled to the possession or control thereof, nor the right to file a petition to sell the same, any more than he would have the right to file a petition to sell some one else's property to pay her debts. Courts of law have no jurisdiction to render judgment against a married woman. Such judgments are absolutely void. *Tavenner* v. *Barrett*, 21 W. Va. 685; *White* v. *Manufacturing Co.*, 29 W. Va. 385 (15 S. E. Rep. 572). Equity follows the law herein except as to her sepa-

rate property, and then the proceedings are *in rem*.  *Picken's Ex'rs* v. *Kniseley*, 36 W. Va. 799 (15 S. E. Rep. 997). Courts of equity will not entertain jurisdiction to collect debts against a married woman unless there is a plain intention to bind her separate property.  1 Story Eq. Jur. § 243, and 2 Story Eq. Jur. § 1397.

Mrs. Doer, so far as the petition shows, did not contract any debts herself, nor does the law permit her committee to do so on her account.  The statute was not designed to change the legal status of a married woman.  Hence, these debts, while they might have been good as against her husband, were mere nullities as to her.  The law is that the committee could sell real estate to pay her debts.  She had no debts, and the petition shows this fact clearly and plainly.  It is not a question of doubt, because it is made certain by the plain provisions of the law.  The law says the committee may petition for the sale of her real estate; but she had no separate estate, and her existence was merged into that of her husband, so that there was no real estate for the committee to ask to be sold.  Being a void debt against an estate or thing not recognized either at law or in equity, following the analogy of the judgments heretofore referred to, the conclusion is unerringly reached that the proceedings and decrees are void, and that the Circuit Court was without jurisdiction to entertain such petition, and grant the relief prayed; and, had the court's attention been directed to the matter, it would, no doubt, have promptly refused the relief.  But the insane woman had no friend at court.

In the commissioner's report and the decree there is included a small debt of forty six dollars, balance due P. Amiss, executor of William Spencer, deceased, on a deed of trust executed by Anton Doer and Delia Doer; but it is not shown, or even alleged, on what property the trust was, or whether the debt was the husband's or the wife's, and the husband was not a party to the proceedings, as he should have been if the proceedings were authorized by law.  This debt was a charge against, and should have been paid out of, the rents received by Adam Hettick.

In addition to the want of jurisdiction, however, it is

plain to be seen that the debts set out in Adam Hettick's petition were not only not debts against the *corpus* of her real estate, but were not debts against her estate in any event, with probably the small exception of the balance on the trust debt. The committee did nothing for her that entitled him to compensation out of her husband's estate. He took charge of and managed her husband's estate. With this she had nothing to do. The charges for repairs and taxes should have been paid out of the rents. Her husband was liable for her suppport and the support of her children, and her estate was not. The judgment of W. II. Smith, Jr., was in no sense a charge against her estate. It has been said that "fraud, in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal duty, trust or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another." 1 Story, Eq. Jur. § 187.

In this case this committee, Adam Hettick, though he may have been acting innocently, yet he was guilty of perpetrating fraud, in the sense of a court of equity, in that he instituted proceedings, and subjected estate over which he had no charge to the payment of illegal claims against the same. The law presumes that he was fully informed as to what his legal rights and duties were, and that, in acting contrary thereto, he did so knowingly, and must be held liable for all the consequences of his illegal acts, as "ignorance of law excuseth no one." The decrees therefore, for the sale and confirmation of Mrs. Doer's real estate, having been obtained by fraud of a tribunal without jurisdiction of the subject-matter, are void.

W. H. Smith, Jr., having been a party to these fraudulent proceedings, and being fully cognizant of the debts allowed, and the beneficiary of the fraud, can not be held free from guilt, although he may have acted from pure motives, and been entirely ignorant of the law, as this is no excuse. "Property obtained by one through the fraudulent practices of a third person will be held under a constructive trust for the person defrauded, though the person receiving the benefit is innocent of collusion. If such per-

son accepts the property, he adopts the means by which it was procured; or, as Lord Chief Justice Wilmot said, 'Let the hand receiving the gift be ever so chaste, yet, if it comes through a polluted channel, the obligation of restitution will follow it.' This principle, of course, can not prevail against a purchaser in good faith for a valuable consideration, and without notice of any fraudulent influence." Perry, Trusts, § 211.

W. H. Smith, Jr., being a party to the proceedings, had knowledge of all the facts vitiating the committee's right to have a sale of the property, and is presumed to know the law, although his lawyers and the courts may be ignorant thereof. He therefore must be held to be a trustee of said property for the benefit of Mrs. Doer, and as such he must account according to the rules of law and equity. It is very plain, then, that Mrs. Doer, if she had recovered her sanity, her coverture being removed, would have the right to maintain this suit to annul the fraudulent and void decrees and deed, and for a restoration of her property; nor would she be barred from so doing by section 18, c. 83, of the Code, because there are errors in the proceedings affecting the very right of the case. *Hull* v. *Hull*, 26 W. Va. 1. Her committee, under the statute, is charged with the duty of preserving her estate, and granted the privilege of suing in relation thereto, and, her husband being now dead, her common-law disability is removed. The conclusion, therefore, is inevitable, that it was not only his right, but his duty, to institute these proceedings to obtain the possession of and care for and preserve said estate. This may appear a harsh determination as to W. H. Smith, Jr., but it is the result of the unfailing rigors of a broken law, whether through ignorance or willfulness, which the court can neither obviate nor modify, whatever may be their sympathies, or however harshly they bear on defeated litigants.

For the reasons aforesaid, the decree complained of is reversed, the decrees of sale and confirmation entered on the 16th day of May, 1882, and the 14th day of July, 1882, and the deed made by Adam Hettick, commissioner to W. H. Smith, Jr., in pursuance thereof, are vacated and an-

nulled, and this cause is remanded to the Circuit Court to be further proceeded in according to the rules of law and equity.

---

BRANNON, JUDGE (*dissenting :*)

I make this short note to say that I am not satisfied of the correctness of the decision in this case. I do not realize how it can be said that the decree of the Circuit Court selling the land of the lunatic was void for want of jurisdiction. Under section 42, c. 58, Code 1868, the court had jurisdiction of such a proceeding. The lunatic was served with process, and a guardian *ad litem* was appointed for her, as might be done in any suit or proceeding under section 13, c. 125, of the same code, and he filed his answer. Thus, the court had jurisdiction of the person of the defendants and of the subject-matter—the sale of an insane person's land; and, this being so, how can we say in a collateral proceeding, that its action is utterly void for want of jurisdiction? That the lunatic was a married woman is not material, as the section is as applicable to the sale of a married woman's land for the causes in it specified as it would be to the sale of her land if she were not married.

Of course, a debt sought to be asserted as an incident in the proceeding ought not to be decreed further than it bound the estate of the lunatic; but the jurisdiction does not depend on the validity of the debt. The bill was filed to sell the land because the personal estate and rents and profits of the real estate, after the payment of debts, were insufficient to maintain the lunatic, and the debts come in not as the sole ground of jurisdiction, but as a mere incident, as the statute required the committee to state them. This provision is made for the benefit of creditors. The fact that a debt not binding the *corpus* of the married lunatic's realty is involved, does not oust the court's jurisdiction of the subject, for that is based on the necessity of a sale to maintain the lunatic. I assert that under that statute an insane *feme covert's* property could be sold out and out, and the decree of an improper debt does not divest the court of jurisdiction of the subject-matter.

Unquestionably, this suit is a collateral proceeding, in the eye of the law. It is not an appellate proceeding. True, its direct object and effect are to annul the decree; but it is none the less collateral. Black, Judgm. § 252. If there was error in law, it was to be corrected by bill of review or appeal, not by a new bill; and an original bill is collateral. I care not that it was a statutory proceeding. The proceeding was according to the statute, and when this is the case, the general principles of jurisdiction govern. *Harvey* v. *Tyler,* 1 Wall. 328. *Pulaski Co.* v. *Stuart,* 28 Gratt. 872; 1 Black, Judgm. § 279; *Cochran* v. *Van Surlay,* 32 Amer. Dec. 570. The *Hull Case,* 26 W. Va. 1, is different. There the widow could under no circumstances file a bill to sell land.

Nor can I see how we can set aside the decree because procured by fraud. Can it be that because the committee set up debts which in law did not bind the *corpus* of the estate, it is fraud sufficient to avoid the decree? The very letter of the statute commanded the committee to state the debts against the lunatic. Did he violate law in stating debts merely because they did not in law bind the land? He may have thought they did. Does his mistake upon a complicated question of law convict him of fraud? He and the creditors submitted the debts to the judicial determination of a court of the country, and because mistaken, or rather because the court was mistaken and decreed debts against the land, which did not in law bind it, the whole adjudication is fraudulent, and must be annulled. Error in the court it was, we may concede, to be remedied in that proceeding by bill of review or appeal; but it does not show such a fraudulent procurement of the decree as to avoid it, and hurts not the committee but the purchaser under that decree by annulling it for fraud. The fraud consisted in nothing more than error of law in the court. Under this doctrine, how many decrees would be annulled and titles set aside! Neither of the parties procured the decree by perjury, duress or other act such as to avoid the decree.

In *Evans* v. *Taylor,* 28 W. Va. 185, this Court held that the simple fact, that a party sues on a false claim—one

even which he knows had been adjudged invalid—is not such fraud as entitles him to enjoin the suit. Suing on a false claim is no fraud. What was done was open, in a court of the country, under the color and form of law. However hurtful to the estate of the insane person it may be, I would regard it as many other cases must be a hard case, it may be, but one done under color of due and orderly proceedings in a public court having jurisdiction, and therefore sheltered under a principle essential to the safety of the highest rights and welfare of person and property. If the decree had been reversed on appeal, the title of the purchaser, he being a creditor and party, might have fallen; but the point I make is that no original bill can be maintained to annul the decree as void. *Hall* v. *Hall*, 12 W. Va. 1; 1 Black, Judgm. §§ 170, 244, 261, 269.

# CHARLESTON.

