# CHARLESTON.

## BLUE v. CAMPBELL.

Submitted September 15, 1904. Decided January 24, 1905.

1. DEMURRER TO BILL.—*Right to Amend —Res Judicata.*

Where a demurrer to a bill in equity has been erroneously over-ruled by the circuit court, and upon appeal the demurrer is sustained, the decree reversed and the cause remanded "To be heard and finally determined according to the rules and principles of equity," although the decree contains no directions for leave to plaintiff to amend his bill, the judgment of the Appellate Court is not *res judicata* and the bill may be amended. (p. 35).

2. COMMISSIONER'S SALE.—*Demand for Deferred Payments not Required.*

Where a sale has been made by a commissioner under a decree of court and notes taken for the deferred payments, no demand for payment thereof is required or necessary. (p. 40.)

Appeal from Circuit Court, Barbour County.

Action by Fred O. Blue, special commissioner, against George C. Campbell and others. Decree for plaintiff, and defendants appeal.

*Modified.*

SAMUEL V. WOODS, for appellants.

DAYTON & DAYTON and F. O. BLUE, for appellee.

McWHORTER, JUDGE:

In cause of Albert G. Welch *et al.* against George G. Campbell, George Campbell, *et al.* in the circuit court of Barbour county, in which a sale of a tract of two hundred and fifty-six acres of land was made January 3, 1861, by special commissioners David Goff and Samuel Woods, which sale was confirmed in 1866 and in the decree of confirmation said Woods was appointed special commissioner to convey to the purchaser, George Campbell, said tract of land upon the payment of all the purchase money. Commissioner David Goff died and the purchase money not having all been paid said Samuel Woods instituted his suit to enforce the collection thereof by the sale of the said tract of land, and obtained a decree for the sale thereof. From which decree George G.

Campbell, the only heir at law and distributee of the pur-
chaser, George Campbell and the surety on the purchase
notes appealed to this Court. The demurrer to the bill was
sustained and the cause remanded for further proceedings to
be had therein. See 45 W. Va. 203. The plaintiff, Samuel
Woods, having departed this life, F. O. Blue was appointed
in his stead as special commissioner to collect said money and
to prosecute said suit. Commissioner Blue filed his amended
bill in the said circuit court, to which bill the defendants,
George Campbell and Bedford Campbell filed their demurrer
as did also the defendants J. Hop Woods and Samuel V.
Woods, administrators with the will annexed of Samuel
Woods, which demurrers were overruled. Said defendants,
George G. Campbell and J. Hop Woods and Samuel V.
Woods also filed their answers to which the plaintiff replied
generally. The cause was referred to a commissioner and
the balance due on the purchase money of said Gilbert
Boyles Farm was ascertained, and a report made by the
commissioner, to which report the defendants Campbell filed
seven exceptions. The cause was heard on the 31st of Octo-
ber, 1903, when the court overruled said several exceptions
and confirmed the report, and entered a decree for $3,031.55
with interest from October 30, 1903, and decreed the sale of
the said land to pay the same. From this decree the defend-
ants, George Campbell and Bedford Campbell appealed and
say that the court erred in overruling the demurrer to the
bill; in confirming the report of the commissioner; in over-
ruling petitioner's exceptions to the commissioner's report,
and in decreeing "That there existed a lien of $3,031.55 in
favor of Blue, special commissioner, for original purchase
money against the Gilbert Boyles Farm, and decreeing sale
thereof."

It is insisted by appellants that the decree of this Court in
sustaining the demurrer to plaintiff's bill is *res judicata* and
that the amended bill filed by the plaintiff, Blue, commis-
sioner, should have been dismissed upon the demurrer. The
Appellate Court sustained the demurrer to the bill for want
of proper allegations of the non-payment of the purchase
money due from said Campbell on the said land. The bill
was not dismissed but the cause, with the other two causes
heard with it was remanded to the circuit court "To be

heard and finally determined according to the rules and principles of equity." It could have been remanded for no other reason than to permit such amendments as would warrant the granting of relief if such amendments could be made. It is the practice of this Court, as well as of the circuit courts, and that practice is founded upon the principles of equity, that where it is obvious that the plaintiff may be able to so amend the allegations of his bill as to entitle him to relief upon the sustaining of the demurrer to grant leave to so amend. While there is no direction in the opinion to the circuit court to allow an amendment, it is here done clearly by implication. If this Court had intended that its decision should be final the bill would have been dismissed and not remanded to the circuit court. In *Pickens* v. *Kniseley*, 36 W. Va. 794 (15 S. E. 997), syl. pt. 1, it is held: "It is not error to omit giving leave to amend upon dismissing a bill upon demurrer, where the record does not disclose that any amendment improving the bill can be made." This language implies, beyond question, that if on the other hand it clearly appear that the bill can be so amended as to entitle the plaintiff to relief he will be permitted to so amend his bill. As held in *Burlew* v. *Quarrier*, 16 W. Va. 108 (syl. pt. 5): "It is the practice of courts of equity to allow amendments to bills when the purposes of justice require it." *Atkinson* v. *Sutton*, 23 W. Va. 197 (syl. pt. 1), it is held: "Where it is apparent to the court from the record of a cause that the real merits sought to be determined are not so presented, either on account of defects in the pleadings or in the evidence, as to enable it to decide the real questions in controversy, it is the duty of the court to require such defects to be removed before proceeding to hear the cause and pass upon it finally. And in a plain case, where the inferior court fails to discharge this duty, the Appellate Court will, for that reason alone, reverse and remand the cause." In case at bar the court had overruled the demurrer to the plaintiff's bill, which bill was clearly bad upon demurrer, and under the last above ruling it was the duty of the circuit court to have sustained the demurrer and granted leave to amend the allegations of the bill, it being clear that the bill was susceptible of such amendment. *Lamb* v. *Cecil*, 25 W. Va. 288; *Doonan* v.

*Glynn*, 26 W. Va. 225; *Love* v. *Tinsley*, 32 W. Va. 25 (9 S. E. 44). The authorities hold that in order to amend the plaintiff must ask leave. 2 Tuck. Com. 268; *Hart* v. *Railroad Company*, 6 W. Va. 336; *Pickens* v. *Kniseley*, *supra.* Of course this rule cannot apply where by the overruling of the demurrer there is no occasion for asking leave to amend. ' In support of their contention that the decree of this court is *res judicata* appellants by counsel cite *Butler* v. *Thompson*, 52 W. Va. 311. This case is not applicable to the case at bar, as it refers to a decree of the Appellate Court reversing the decree upon the merits, and remands the cause to the circuit court "For further proceedings therein to be had according to the rules and principles stated in the written opinion," filed in the cause and that the findings of fact set forth in the opinion are binding upon the court below, which court could not permit new pleadings, and further evidence to be filed, but must enter a decree in accordance with the opinion. The decision in case at bar was not upon the merits of the case, but a ruling upon the demurrer for want of proper allegations, and the cause was remanded for further proceedings, when, if it had appeared that the bill could not have been amended the same would have been dismissed in the Appellate Court, and not remanded for further proceedings therein to be had. The amended bill filed by commissioner, F. O. Blue, contains sufficient allegations to entitle him to relief. He alleges the non-payment of the purchase money, and that the same is still due and owing and has never been paid, and alleges that the cause of such non-payment was the fact that the commissioner, Woods, was the counsel of the said Campbells, and that said Woods and George G. Campbell his client, colluded and combined together to prevent the collection of the said money, and to defraud the then infant parties who were also non-residents of the State, out of the sum due them from the proceeds of the sale of said Boyles farm, and that all the delays and *laches* in collection of said purchase notes were solely due to the misconduct of said commissioner Woods and said purchaser Campbell; that the defendant S. L. Reger claimed to be the assignee of certain portions of said funds from the parties defendants entitled thereto, and that he in turn had conveyed and assigned said interests claimed by him. The

original suit, in which this land was sold, was still pending, having been left off the docket, was re-instated by order of the court on the 17th of July, 1886. On the 7th of October, 1886, George G. Campbell, the surety on said notes and the sole heir at law and distributee of George Campbell, and the commissioner Woods made an adjustment of that part of said purchase money which was payable to the said George G. Campbell, which was entered as credits upon the three several notes by the commissioner Woods. This was an acknowledgment at that date that all the the purchase money had not been paid. If he then contended that it was all paid, why did he not satisfy his own counsel, Judge Woods, that it had been so paid and receive from him a deed for the land? His contention is that it was paid to commissioner Goff, about 1865, or 1866. The other tracts purchased by him were paid for at that time and he received from commissioner Woods deeds for the same, yet received no deed for this tract of 256 acres. Commissioner Goff lived until about the year 1882 or 1883, some 17 or 18 years after he claims to have paid all the purchase money; yet during all that time he failed to satisfy his counsel, commissioner Woods, by receipts of Goff, or otherwise, that he had paid all the purchase money to entitle him to a deed to the property. All this time the suit in which sale was made and confirmed, and in which proceedings on a rule or otherwise, could have been taken, for the collection of the purchase money, was pending in the court and he took no steps and made no effort in all that time to have the suit expedited, although it stood there a constant menace to his interests. Was it not his duty in his own interest to have placed himself in a position to have demanded the deed for the property? *Fisher* v. *McNulty*, 30 W. Va. 186 (syl. pt. 3), it is held: "Delay and *laches* in the prosecution of a suit, after it has been commenced, are not generally matters of which the defendant can complain or avail himself, where the record fails to show that he made any effort in the court below to expedite the cause." After the *laches* and delay of which the defendant Campbell was guilty to the detriment of his own interests during the seventeen or more years from the time he claimed the payment in full was made to Goff, before Goff's death, he is hardly in a position to claim plaintiffs

were guilty of *laches* and delay in prosecuting their suit.
He was in position during all that period to have enforced
the decree providing for making him a deed, if in fact he
had paid the purchase money as he contends. The benefici-
aries were non-residents and depending upon their counsel to
press the collection of their claim, and the active commis-
sioner was without the county in which the collection had to
be made, while his co-commissioner was sole counsel for the
purchaser, and for his sole distributee after his decease, and
residents of the same county. A vendor's lien or a trust is
never barred by the statute of limitations so far as the trust
subject is concerned. The notes made for the debt are
barred at law as a personal liability; but the subject matter
of the lien is always subject to the equitable and not to the
legal rule, and while under the statute an obligation is barred
in ten years, yet under the equitable rule no absolute bar
arises, only a presumption of payment, after the lapse of
twenty years, which presumption may be rebutted. *Hop-
kins* v. *Codkerell*, 2 Grat. 88, is a case where H. living in Penn-
sylvania, sold to B. his right and title to a tract of land in Vir-
ninia, and agreed to convey the same when B. should pay the
purchase money, for which B. executed his bonds to H. in 1797.
N. purchased B's. bargain and agreed by parol, with H., to
take B's. place, and paid H. $300.00 in part of the purchase
money in the same year. N. died in 1815, not having re-
ceived a conveyance or paid the balance of the purchase
money, and his executors under the power in his will sold the
land. In 1832 a suit was brought by an assignee of one of
the devisees of N. to obtain his portion of the purchase
money remaining unpaid on the last sale. H. was made a
party defendant and answered the bill, and then filed a cross-
bill setting up his claim to a lien upon the land for the bal-
ance of the original purchase money. To the cross bill the
representative of N. in 1834, pleaded the statute of limita-
tions. It was held: "The statute is no bar to the claim of
H.;" and "Under the circumstances of this case held: The
lapse of time is no bar to H's. recovery upon his lien as
against the representative of N. and the assignee of the
devisee of N." *Criss.* v. *Criss*, 28 W. Va. 388-396; *Coles* v.
*Withers*, 33 Grat. 186; *Camden* v. *Alkire*, 24 W. Va.
674; *Pitzer* v. *Burns*, 7 W. Va. 63; *Hanna* v. *Lambert*, 33

Grat. 256; *Caldwell* v. *Prindle,* 19 W. Va. 604. In *Evans* v. *Johnson*, 39 W. Va. 299. (syl. pt. 3) it is held: "No time bars the right, either under the statute of limitations or presumption of payment, of a vendor to recover purchase-money for land, if he has not parted with the legal title." Thus it seems to have been held by this Court, unequivocally, that presumption of payment cannot avail as a defense where the legal title has been withheld. I presume it will not be contended for a moment that the defendant, Campbell, could enforce the decree for the conveyance to him under his purchase of the two hundred and fifty-six acres of land, without affirmatively showing to the satisfaction of the court that all the purchase money had been paid.

The first and second exceptions to the commissioner's report raise the same questions that are raised upon the demurrer to the bill.

The third exception is that the commissioner erred in "Calculating the interest from the 19th of March, 1866, when in truth and in fact no interest should be calculated thereon except from the date of the demand of payment from the special commissioner by those entitled to receive the purchase money, it having been shown by the deposition of Commissioner Woods, that no demand had ever been made at the time his bill was filed." The purchase of the two hundred and fifty-six acres from the commissioners on the third day of January, 1861, although not confirmed until March, 1866, relates back to the day of sale, and the notes all bearing date on the day of sale bear interest from their date, as shown on their face. *Kale* v. *Shaw*, 33 W. Va. 299. The record itself was a standing demand for the payment of the purchase money.

The fourth exception, that the commissioner did not find as shown by the deposition of Samuel Woods,· that George G. Campbell was entitled to $179.65 to be credited on his debt as of the date of said statement, as an heir of the half-blood of George W. Bedford. It appears from the record that this exception is well taken and should have been sustained, as it appears from the deposition of Samuel Woods, after the payment of all the debts of George W. Bedford there remained a sum of $2,094.38, due to the estate of said Bedford for distribution amongst his heirs, the amount of the same due to George G. Campbell, half-brother, and heir of

the half-blood, the sum of $179.65, which was not credited
to the said George G. Campbell and for which he was entit-
led to have a credit as of the 19th day of March, 1866. In
this respect the decree is erroneous.

The fifth exception to the report is because the amount
found and the debt reported by Commissioner Kittle, is
at variance with his former report made on the 27th of Jan-
uary, 1902, where he found the amount due to be $1,059.93
upon which he calculated the interest from the 9th day of
December, 1865, while in the report now complained of he
found said amount to be $930.40, with interest from March
19, 1866. As this variance is in favor of the appellants they
cannot complain of it, and the last amount is that fixed by
Samuel Woods in his deposition.

The sixth exception is that he does not report the persons
entitled to receive the money which he finds due and payable
to the special commissioner. While the commissioner does
not give this information in his last report of September 24,
1903, it is sufficiently set out in the report of January 27,
1902, with the exhibits filed therewith.

The seventh and last exception, is because the commission-
er did not find the debt claimed to have been paid as testified
to by George G. Campbell in his deposition, which was un-
contradicted by any testimony and uncontroverted by any
circumstances, except that the original notes remained in the
file of the papers. This proposition does not appear to be
seriously considered by counsel for appellant. Section 23,
ch. 130, Code, is too plain to be misunderstood, and all that
is said about it by counsel for appellant in his brief is in his
"deductions" at its close "(g) Campbell is rendered compe-
tent to testify because Woods, commissioner, testified to the
same matter."

For the reasons herein given the decree will be modified
by deducting the credit of $179.65 as of the 19th of March,
1866, from the said sum of $930.40, which leaves $750.75 as
the true amount bearing interest from March 19, 1866, until
October 30, 1903, amounting to the sum of $2,445.17, the
amount of said decree with interest from said October 30,
1903, until paid, and with such modification the decree is af-

firmed with costs to the appellants as the party substantially prevailing and the cause remanded for further proceedings. to be had therein.

*Modified.*