No. 15-0692 – *Diane Horton, Executrix of the Estate of Gene Ray Dudding v. Professional Bureau of Collections of Maryland, Inc.*

**FILED**

**November 17, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Davis, Justice, dissenting:

The majority's opinion in this case finds that Mr. Dudding's claims against Professional Bureau of Collections of Maryland, Inc. ("the Bureau") do not survive his death. Even though the Bureau repeatedly called Mr. Dudding using a number that masked its true identity, persistently called Mr. Dudding while he was on his deathbed, blatantly ignored repeated requests to call Mr. Dudding's attorney during Mr. Dudding's final days in hospice care, and continued to call Mr. Dudding's cell phone after his passing, the majority's decision herein effectively excuses the Bureau for all of these nefarious debt collection practices. This result is unjust and has produced an opinion with which I cannot agree. Accordingly, I dissent from the majority's decision in this case.

### A.  Survivability

In its decision of the case *sub judice*, the majority concludes that Mr. Dudding's claims under the West Virginia Consumer Credit and Protection Act ("CCPA"), W. Va. Code § 46A-1-101 *et seq.*, do not survive his death because they do not sufficiently allege a cause of action for fraud. Pursuant to W. Va. Code § 55-7-8a(a) (1959) (Repl. Vol. 2016),

1

> [i]n addition to the causes of action which survive at common law, *causes of action* for injuries to property, real or personal, or injuries to the person and not resulting in death, or *for deceit or fraud, also shall survive*; and such actions may be brought notwithstanding the death of the person entitled to recover or the death of the person liable.

(Emphasis added). Under the facts of the instant case, Ms. Horton, the executrix of Mr. Dudding's estate, contends that the CCPA claims originally brought by Mr. Dudding sound in fraud and deceit, and, as such, they survive his death. In rejecting this argument, the majority opines that Mr. Dudding has not sufficiently proved the elements of a cause of action for fraud. *See* Syl. pt. 1, *Lengyel v. Lint*, 167 W. Va. 272, 280 S.E.2d 66 (1981) ("The essential elements in an action for fraud are: '(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.' *Horton v. Tyree*, 104 W. Va. 238, 242, 139 S.E. 737 (1927)."). This, however, is the wrong analysis.

The majority makes much of the fact that Mr. Dudding's claims have not established the essential elements of a cause of action for fraud. This is a correct assessment of Mr. Dudding's case, but it completely misses the mark of the relevant inquiry. Mr. Dudding has not sustained his burden of proof for a cause of action alleging fraud *because he never asserted a cause of action for fraud in his complaint*. Instead, the counts appearing in Mr. Dudding's complaint claim that the Bureau violated the CCPA, committed common

law negligence, and intentionally inflicted emotional distress. As such, the operative inquiry is not whether Mr. Dudding has satisfied the elements for a cause of action in fraud, but rather whether the CCPA violations he has alleged are sufficiently analogous to fraud or deceit such that these claims survive his death. This correct analysis is completely in keeping with the central purpose of the West Virginia Consumer Credit and Protection Act:

> *The purpose of the CCPA is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action.* As suggested by the court in *State v. Custom Pools,* 150 Vt. 533, 536, 556 A.2d 72, 74 (1988), "[i]t must be our primary objective to give meaning and effect to this legislative purpose." Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended. *Kisamore v. Coakley,* 190 W. Va. 147, 437 S.E.2d 585 (1993) (per curiam); *Hubbard v. SWCC and Pageton Coal Co.,* 170 W. Va. 572, 295 S.E.2d 659 (1981); *Wheeling Dollar Savings & Trust Co. v. Singer,* 162 W. Va. 502, 250 S.E.2d 369 (1979).

*State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 777, 461 S.E.2d 516, 523 (1995) (emphasis added). Under the facts of this case, it is clear that Mr. Dudding sufficiently pled CCPA claims that sound in fraud and deceit.

This Court extensively has considered the meaning of fraud as that term is used in the survivability statute, W. Va. Code § 55-7-8a(a):

> *Fraud has been defined as including all acts, omissions, and concealments which involve a breach of legal duty*, trust or confidence justly reposed, *and which are injurious to another*,

3

or by which undue and unconscientious advantage is taken of another. *See, Dickel v. Smith*, 38 W. Va. 635, 18 S.E. 721 (1893); 8B Michie's Jurisprudence, *Fraud and Deceit* §§ 1 and 2 (1977); 37 Am. Jur. 2d *Fraud and Deceit* § 1 (1968).

Fraud may be either actual or constructive. The word "fraud" is a general term and construed in its broadest sense embraces both actual and constructive fraud. Actual fraud, or fraud involving guilt, is defined as anything falsely said or done to the injury of property rights of another. *Hulings v. Hulings Lumber Co.*, 38 W. Va. 351, 18 S.E. 620 (1893). *Actual fraud is intentional, and consists of intentional deception to induce another to part with property or to surrender some legal right, and which accomplishes the end designed. Miller v. Huntington & Ohio Bridge Co.*, 123 W. Va. 320, 15 S.E.2d 687 (1941). *See also, Steele v. Steele*, 295 F. Supp. 1266 (S.D. W. Va. 1969); *Bowie v. Sorrell*, 113 F. Supp. 373 (W.D. Va. 1953).

*Constructive fraud is a breach of a legal or equitable duty, which*, irrespective of moral guilt of the fraud feasor, *the law declares fraudulent, because of its tendency to deceive others*, to violate public or private confidence, *or to injure public interests. Miller v. Huntington & Ohio Bridge Co.*, 123 W. Va. 320, 15 S.E.2d 687 (1941). *See also, Steele v. Steele*, 295 F. Supp. 1266 (S.D. [W.] Va. 1969); *Bowie v. Sorrell*, 113 F. Supp. 373 (W.D. Va. 1953); *Loucks v. McCormick*, 198 Kan. 351, 424 P.2d 555 (1967); *Bank v. Board of Education of City of New York*, 305 N.Y. 119, 111 N.E.2d 238 (1953); *Braselton v. Nicolas & Morris*, 557 S.W.2d 187 (Tex. Civ. App. 1977).

Perhaps the best definition of constructive fraud is that it exists in cases in which conduct, although not actually fraudulent, ought to be so treated, that is, in which conduct is a constructive or *quasi fraud*, which has all the actual consequences and legal effects of actual fraud. *In Re Arbuckle's Estate*, 98 Cal. App. 2d 562, 220 P.2d 950 (1950). Constructive fraud does not require proof of fraudulent intent. The law indulges in an assumption of fraud for the protection of valuable social interests based upon an enforced concept of confidence, both public and private. *Perlberg v. Perlberg*, 18 Ohio St. 2d

55, 247 N.E.2d 306 (1969). . . .

> The problem here is that our survivability statute, W. Va. Code, 55-7-8a, uses broad terminology as to what types of causes of actions will survive. *In determining whether a particular cause of action fits into one of these broad categories, we must of necessity apply the general terms to the particular case. . . . [W]e recognize that as a general rule a survival statute such as W. Va. Code, 55-7-8a, is to be liberally construed as it is remedial in nature.* [*Wheeling ex rel.*] *Carter v. American Casualty Co.*, 131 W. Va. 584, 590, 48 S.E.2d 404, 408 (1948); *cf. Wilder v. Charleston Transit Co.*, 120 W. Va. 319, 197 S.E. 814 (1938); 1 Am. Jur. 2d *Abatement, Survival & Revival* § 54 (1962).

*Stanley v. Sewell Coal Co.*, 169 W. Va. 72, 76-78, 285 S.E.2d 679, 682-83 (1981) (emphasis added; footnote omitted).

From the allegations set forth in Mr. Dudding's complaint, it is clear that the subject CCPA violations averred therein sound in fraud so as to render them survivable under W. Va. Code § 55-7-8a(a). Specifically, the complaint alleges that

> The Defendant [the Bureau] has engaged in repeated violations of Article 2 of the *West Virginia Consumer Credit and Protection Act*, including but not limited to,

> > a. engaging in unreasonable or oppressive or abusive conduct towards the Plaintiff [Mr. Dudding] in connection with the attempt to collect a debt by placing telephone calls to the Plaintiff in violation of *West Virginia Code* § 46A-2-125;

> > b. causing Plaintiff's phone to ring or engaging persons, including the Plaintiff, in telephone conversations repeatedly or continuously or at

5

unusual times or at times known to be inconvenient, with the intent to annoy, abuse or oppress the Plaintiff in violation of *West Virginia Code* § 46A-2-125(d);

c. using unfair or unconscionable means to collect a debt from Plaintiff in violation of *West Virginia Code* § 46A-2-128(e) by communication with Plaintiff after it appeared that the Plaintiff was represented by an attorney and the attorney's name and address were known or could be easily ascertained;

d. failing to clearly disclose the name of the business entity making a demand for money upon Plaintiff's indebtedness in violation of *West Virginia Code* § 46A-2-127(a) and (c).

Not only did the Bureau purposely conceal its identity during its repeated telephone calls to Mr. Dudding, but it may also be presumed that, by its blatant and continuous violations of the CCPA, the Bureau sought to usurp Mr. Dudding's rights as a consumer that are protected by the CCPA and that the CCPA allows him to enforce. *See generally* W. Va. Code § 46A-5-101(1) (2015) (Repl. Vol. 2015) (affording consumers cause of action and remedies for violations of CCPA). Finally, it goes without saying that the Bureau's actions have had an injurious effect upon Mr. Dudding's property rights: but for the Bureau's repeated statutory violations, Mr. Dudding would not have had to hire a lawyer, incur legal fees, or sustain the costs of litigating his CCPA claims against the Bureau. Because the claims set forth in Mr. Dudding's complaint alleging violations of the CCPA sound in fraud, such causes of action, by statutory definition, survive his death. *See* W. Va. Code § 55-7-8a(a).

6

### B. *Standing*

Having established that Mr. Dudding's CCPA claims survive his death, the next inquiry is whether Ms. Horton, as Mr. Dudding's personal representative, has standing to prosecute such claims on his behalf. Pursuant to the pertinent authorities, Ms. Horton has standing to pursue Mr. Dudding's claims in his stead.

Standing to bring a cause of action under the CCPA is afforded to consumers. *See generally* W. Va. Code § 46A-5-101. In turn, "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." W. Va. Code § 46A-2-122(a) (1996) (Repl. Vol. 2015). Although the Legislature has not defined the term "natural person," courts construing this term understand "natural person" to mean a "human being." *See Shawmut Bank, N.A. v. Valley Farms*, 222 Conn. 361, 366, 610 A.2d 652, 654-55 (1992) ("[N]atural person . . . clearly means a human being[.]"); *Industry to Industry, Inc. v. Hillsman Modular Molding, Inc.*, 247 Wis. 2d 136, 142, 633 N.W.2d 245, 249 (Ct. App. 2001) ("[A] 'natural person' is defined as a 'human being[.]'" (citation omitted)), *aff'd*, 252 Wis. 2d 544, 644 N.W.2d 236 (2002).

It goes without saying that Ms. Horton is a human being, and, as such, a "natural person" within the contemplation of W. Va. Code § 46A-2-122(a). Moreover, as the executrix of Mr. Dudding's estate, Ms. Horton is vested with the authority to bring and

defend legal claims on Mr. Dudding's behalf: "[t]he executor or administrator is the proper representative of the personal estate, and generally all suits should be brought by and against him in relation thereto." Syl. pt. 10, in part, *Richardson v. Donehoo*, 16 W. Va. 685 (1880). *Accord* W. Va. Code § 2-2-10(j) (1998) (Repl. Vol. 2013) ("The words 'personal representative' include the executor of a will . . . and every other curator or committee of a decedent's estate for or against whom suits may be brought for causes of action which accrued to or against such decedent[.]"); W. Va. Code § 44-1-22 (1923) (Repl. Vol. 2014) ("A personal representative may sue or be sued upon any judgment for or against, or any contract of or with, his decedent."). As such, Ms. Horton is the proper party to substitute for Mr. Dudding upon his death during the pendency of the instant proceedings.

Because I do not agree with the majority's interpretation and application of the law governing its decision in this case, I dissent.

8