# CHARLESTON.

EMORY TYLER, *Committee, Etc., v.* ALBERT RILEY *et al.*

(No. 5146.)

Submitted March 3, 1925.          Decided March 10, 1925.

1.   INSANE PERSONS—*Court, on Report of Master Commissioner,
     May Decline to Direct Sale of Lands of Insane Person at
     that Particular Time; Decreeing Possession of Land of
     Insane Person to His Wife on Condition That She Pay
     Taxes, Commit No Waste, and Preserve It in Its Then Con-
     dition, Held Not Error; Refusal to Decree Sale of Insane
     Person's Land Held Not Error.*

     In a summary proceeding by the committee of an insane
     person under Sec. 23, Chap. 58 Barnes' Code 1923, to sell,
     98 W. Va.

lease or mortgage the real estate for payment of debts of the insane person, the court upon the coming in of the report of a master commissioner who has heard the parties interested and investigated the matters contained in the petition, may decline to direct the sale of the lands at that particular time; and where it appears that the insane person cannot be restored to sanity, and is in the state asylum, that his wife and four infant children reside upon the "home place" where by the efforts of the wife they are maintained from the land without committing waste, that she has paid all of the indebtedness for which the land can be legally sold, and does not seek to sell the land for her claims thus acquired, it is not error to decree to her possession of the land upon the condition that she will pay the taxes, commit no waste and preserve the farm in its then condition; nor is it error to refuse to decree a sale, it clearly appearing that it will not be to the best interest of those having the beneficial interest therein.    (p. 452.)

(Insane Persons, 32 C. J. §459 [1926 Anno.])

2.    SAME—*Decreeing as Liens Upon Lands of Insane Person Debts, Contracted Subsequent to Adjudication of Insanity, is Error.*

.In such proceeding it is erroneous to decree as liens upon the lands debts which have been contracted subsequent to the adjudication of insanity.    (p. 456).

(Insane Persons, 32 C. J. §469 [1926 Anno.])

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Mineral County.

Petition by Emory Tyler, committee of Albert Riley, an insane person, to sell land of such person, opposed by Lavinia Riley, wife of Albert Riley, and others. From decree refusing sale of lands, the committee appeals.

*Reversed in part; affirmed in part; remanded.*

*W. C. Grimes,* for appellant.

LIVELY, PRESIDENT:

Emory Tyler, having on May 31, 1921, qualified as committee of Albert Riley, an insane person, filed his petition in the circuit clerk's office on October 13, 1922, alleging that Albert Riley was the owner in fee of a farm of 178 acres and the owner of another tract of 74 acres subject to a life

estate therein of Lucy Riley, then about 80 years old; that
he owned very little or no personal estate; that there was
a deed of trust on the first mentioned tract to secure pay-
ment by Riley of the sum of $300.00 to Oglesbee; that Riley
owed $100.00 to Oglsbee; $51.91 as taxes for the year 1921,
and $72.60 taxes for 1922; to Grimes, an attorney's fee of
$100.00; to the petitioner, $50.00 incurred as committee; to
Siever Hardware Company, $31.00; to Broome, $9.21; and
to the appraisers of the estate appointed when the committee
qualified, the sum of $9.00; that the rents, issues and profits
of the real estate would not rent for sufficient money to pay
the indebtedness and provide for maintenance of the wife,
Lavinia Riley and her four infant sons, ranging in age from
six to twelve years.  The petition avers that it would be to
the interest of Albert Riley that the real estate be sold, be-
cause the wife was living in adultery with Simmons on the
farm, which was deteriorating in value from neglect; that
it would be to the best interest of the children to sell the
land; that the wife and mother is not entitled to dower in-
terest therein because of her conduct in living in adultery and
because she had been living separate and apart from her
husband before he was declared to be insane.  The prayer
is that the land be sold, the debts paid from the proceeds,
and the remainder invested under direction of the court,
and for general relief. The infants answered by guardian *ad
litem* in the usual formal way. Lavinia Riley also answered.
She avers that her husband owed to Oglesbee $50.00
only and denying that her husband owed any debts except
the $50.00 to Oglesbee and the taxes; that Riley owned no
personal estate as alleged in the petition; that the issues
and profits of the land were sufficient to maintain and sup-
port her and her children; that she had been and then was
living on the land and maintaining herself and children
and keeping them together; educating and clothing them
as best she could; that she is not and never has been living
in adultery with Simmons; that if the land is sold she will
be compelled to place her children in some eleemosynary in-
stitution, or upon charity; that she has committed no waste
on the land; and that while the fences and house are in bad

condition, they are in better condition and repair than when
her husband had charge; that she had not lived separate
and apart from her husband before he was declared insane;
that it is not true that it would be to Riley's interest or to
the interest of the children to sell the land; that Riley is in-
debted to her for alimony, counsel fees and court costs
awarded to her by the circuit court in a divorce suit pending
at the time he was declared insane.   She further answers
that if permitted to occupy the land and keep her children
thereon and rear them, she will pay the taxes and debts there-
on, keep the farm from deteriorating and will commit no
waste thereon.

The cause was referred to a master commissioner who
made a report which was excepted to, and it was recommitted
to him, followed by a second report. Evidence on the issues
was taken before him.

It appears that Riley had been arrested for non-support
of his wife and children, and while in jail executed the deed
of trust to secure Oglesbee as surety on a bond conditioned
that he would support them.   Oglesbee had to pay $50.00
by reason of going on that bond.   The wife, upon continued
failure of support, instituted a divorce suit against Riley,
and temporary alimony and suit money was awarded her.
He refused to pay and was placed in jail for contempt of the
court's decree.   While in jail on the contempt charge, he
was adjudged insane, and was sent to the asylum at Weston.

The evidence is that he will never recover sanity.   The di-
vorce proceedings abated.   The commissioner reported in his
second report that Lavinia Riley, the wife, had paid the taxes
amounting to $131.00; the debt to Oglesbee of $67.20; to the
committee $30.55 expended by him as such; the costs of this
suit amounting to $162.57; the appraisers fees of $9.00 and
about $14.50 for roofing and fencing, amounting in all to
$414.82; that the personal property which came into her
hands, such as corn, potatoes, plows, harness, household and
kitchen furniture, cow, two yearlings, a black mare and one
buggy, had been used by her and were being used by her for
the maintenance and support of herself and children; that
she had received no rent; that the remainder of the debts

against the estate remaining unpaid were an attorney's fee of W. C. Grimes as attorney for Albert Riley in the divorce suit, said fee being $50.00; and an attorney's fee to the same person as attorney for the committee, amounting to $100.00, in all, $150.00. The adultery charge was reported as not proven in the first report. There were no exceptions to the second report.

The decree entered, and which is appealed from, finds that the wife used all the money derived by her from certain sales of a portion of the personal estate in the support of herself and children, and decrees that she shall not make further accounting for any of the proceeds derived from the sale thereof; that the committee had received no funds from the estate and was required to make no settlement; that the wife, Lavinia Riley having paid the bills, fees, costs of suit, taxes and debts against Albert Riley, her husband, amounting to $412.32, and a further indebtedness of attorney's fees and costs of suit amounting to $173.30, which she was required to pay before entry of the decree, the total sum paid by her amounting to $585.63, such sums so paid by her should be a lien in her favor against the real estate of her husband and docketed as such in the office of the clerk of the county court. The court by this decree found that the real estate would not sell for a sufficient sum to permit the wife and children to live upon the income; that to permit them to occupy the dwelling house and use the land would be to their best interests, and decreed that they should remain in possession of the land upon the condition that she should keep the taxes paid, maintain it in its present condition, and commit no waste.

Error is assigned because the decree places the home place in the possession of the widow and deprives the committee of that right to which he is entitled under the statute. The committee is not ousted, any more than if the court had ordered the land to be rented by a commissioner of the court. Moreover, the possession of the land by the committee is not for his personal benefit, but for the benefit and welfare of those who now have the beneficial interest therein, namely, the wife and children. If he took possession and rented the

property, the rents would go for the maintenance and sup-
port of the wife and children, and it clearly appears from
the evidence that the amount realized from investment of the
proceeds of sale would not be sufficient for their support,
whereas, by leaving them in possession (practically a rental
to her) they can be kept together, the children clothed,
schooled and supported. Under the facts, we cannot say the
court erred in this regard. Who is injured? Riley is the
State's ward and is hopelessly insane. He needs no proceeds
from the farm; his wife and children are the ones who need
the proceeds, and under the decree they get the same with
better results and in a fuller measure, and without costs and
commissions being taken therefrom. The committee is pro-
tected by the court's decree. Should the terms under which
she holds possession be violated the committee can find an
easy remedy. The estate is preserved intact.

Another point of error urged is that the committee must
pay the indebtedness out of the personal and real estate,
and this he cannot do. This is the object of the summary
proceeding. The prayer is that the real estate, or so much
thereof as may be necessary, be sold to pay Riley's indebted-
ness, and that the remainder of the proceeds be invested un-
der the order of the court. Riley's indebtedness for which
the land could be sold consisted of the taxes, the $50.00 debt
to Oglesbee, and the attorney's fee claimed by Mr. Grimes
for legal services in the divorce proceedings. The debts con-
tracted, or brought into existence after the finding of in-
sanity are not debts for which the estate can be sold. *Dickel*
*v. Smith,* 38 W. Va. 635. Much of the present alleged in-
debtedness has accrued subsequent to Riley's commitment. It
is true that the wife was allowed temporary alimony and suit
money in the divorce suit, but the court disallowed that
claim for some reason not clear to us, and we find no cross
assignment of error for that error, if error it be. That large
item of indebtedness is not now in the case. But the wife,
in order to save the home from sale, has paid off the debts
of her husband, as well as those since contracted and incurred,
including the costs of this litigation, and is not clamoring
for a sale to discharge her claims. She is resisting sale. The

statute, Sec. 25, Chap. 58, Code, says that upon the coming in of the report of the commissioner in chancery after he has made inquiry into the matters alleged in the petition and heard all the parties interested in the real estate, *if it appear proper to the court* an order shall be entered for sale of so much of the real estate as may be necessary. The court by its decree has evidently found it was not a proper case for the entry of an order of sale. See Sec. 14, Chap. 82, Code. We cannot say from this record that the court has abused its discretion. The tract of 74 acres in which Riley has a reversionary fee, would likely not sell for its true value encumbered at this time by a life estate. The life tenant is 80 years old, and in all human probability the life estate will soon be extinguished. As the sole creditor, the wife who has voluntarily paid off and discharged the debts is not insisting upon sale, the court was justified in deferring action for the payment of her claims. However, we hold that it was error to decree that all of the sums paid by her should be fixed as a lien upon the lands. Only those debts which were owing by Albert Riley at the time he was declared insane, and which she has paid, can be so decreed. The decree will be reversed in that respect only, and affirmed in all other respects, and the cause remanded for modification of the decree as indicated and for further proceedings as the lower court may deem proper. The appellees are the parties substantially prevailing, and will be awarded their costs on this appeal.

*Reversed in part; affirmed in part; remanded.*